## In re LIMA MEMORIAL HOSPITAL et al.

[Cite as *In re Lima Mem. Hosp.* (1996), 111 Ohio App.3d 225.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 95APH08–1072.

Decided May 23, 1996.

226

*Bricker & Eckler, Gretchen A. McBeath* and *Scott W. Taebel,* for appellees.

*Betty D. Montgomery,* Attorney General, *Dennis G. Nealon* and *Kent M. Shimeall,* Assistant Attorneys General, for appellant.

PETREE, Presiding Judge.

Appellant, Ohio Department of Health ("ODH"), appeals the order of the Certificate of Need Review Board ("board" or "CONRB"), awarding a certificate of need ("CON") to appellees, Lima Memorial Hospital and St. Rita's Medical Center ("appellees"), for the establishment of a joint open-heart surgery program in Lima, Ohio. On appeal, ODH raises six assignments of error for review:

"I. The Board erred as a matter of law when it refused to dismiss the appeal on *res judicata* grounds.

"II. The Board erred in failing to deny the CON when the Board did not obtain five lawful votes of its members in favor of the application.

"III. The Board erred as a matter of law when it relied on as fact, matters specifically vacated by the court of appeals.

"IV. The Board erred as a matter of law when it permitted the aggregation of cardiac cath numbers from two different, geographically separated cath labs in separate hospitals to meet the requirements of Ohio Adm.Code 3701–12–24(I).

"V. The Board erred as a matter of law when it precluded the introduction of additional evidence on salient issues as mandated by this Court's order.

"VI. The decision of the Board is not supported by reliable, probative and substantial evidence and is not in accordance with law."

As this case has been before this court on two prior occasions, a brief history is in order. On May 10, 1991, appellees filed an application with ODH for a CON to establish a joint open-heart surgery program. On December 20, 1991, the director of ODH denied the CON; appellees appealed the denial to the CONRB. After an adjudication hearing and recommendation by a hearing examiner that the CON be denied, the board rejected the hearing examiner's recommendation and granted the CON based upon mid-year projections of the number of cardiac

catheterization procedures that would be performed in 1992.[1] ODH appealed to this court.

In *In re Lima Mem. Hosp.* (Aug. 24, 1993), Franklin App. No. 93AP–580, unreported, 1993 WL 367402 (*"Lima I"*), this court determined that the "per laboratory" requirement contained in Ohio Adm.Code 3701–12–24(I) allows the laboratories operated by hospitals filing a joint application to be considered as a single laboratory. This court vacated the order granting the CON because the application did not meet the requirements of Ohio Adm.Code 3701–12–24(I), in that the 1992 procedure figures were projections rather than the actual number of procedures performed, and remanded the cause "for further appropriate proceedings."

Although on remand, appellees submitted evidence that the combined laboratories had actually performed eight hundred catheterization procedures in 1993, the board did not conduct further proceedings as mandated by *Lima I*, but, instead, merely discussed and denied the CON at the December 1993 board meeting. Appellees appealed to this court, arguing that the board's order violated this court's express instructions on remand.

In *In re Lima Mem. Hosp.* (Sept. 27, 1994), Franklin App. No. 93APH12–1736, unreported, 1994 WL 530300 (*"Lima II"*), this court reversed the order denying the CON because (1) the board did not follow this court's mandate in *Lima I* to consider evidence as to whether appellees had met the eight-hundred-catheterizations requirement, and (2) the board inappropriately reopened issues which had already been decided in *Lima I* and which constituted the law of the case. Accordingly, this court remanded the cause to the board "for further proceedings in accordance with law and consistent with this opinion."

On remand, the board referred the case to a hearing examiner, who determined, pursuant to this court's remand instructions in *Lima I* and *II,* that the sole remaining issue in the case was whether appellees had satisfied the eight-hundred-catheterizations requirement. After an adjudication hearing at which appellees submitted evidence to establish compliance with the eight-hundred-catheterizations requirement, the hearing examiner recommended that the CON

---

1. At that time, Ohio Adm.Code 3701–12–24(I) set forth one of the specific review criteria for proposed open-heart surgery services and provided, in pertinent part:

    "The director shall not grant a certificate of need * * * relating to a proposed open-heart surgery service to be located at a hospital where PTCA [percutaneous transluminal coronary angioplasty] or high-risk procedures will be performed or high-risk patients will be served unless:

    "(1) If it is in existence, the cardiac catheterization service performed an average of at least eight hundred cardiac catheterization procedures per laboratory during the most recent calendar year for which the hospital has filed its 'Annual Hospital Registration Report.'"

be granted. The board accepted the hearing examiner's recommendation and granted the CON. ODH appeals from that order.

■ By the first assignment of error, ODH asserts that the board erred in failing to dismiss appellees' appeal of *Lima II* on *res judicata* grounds.

On January 14, 1994, while the case was pending in *Lima II*, appellees submitted a second CON application to ODH to establish a joint open-heart surgery program. ODH denied the application on September 13, 1994. Appellees appealed the denial to the board; however, on January 18, 1995, appellees voluntarily dismissed the appeal prior to an adjudication hearing on the merits.

ODH argues that the voluntary dismissal of the second CON application renders ODH's decision to deny that application final as to both the first and second applications. More specifically, ODH asserts that the issues appellees' sought to raise in the administrative hearing held on remand, relating to the first application, could have been presented in the hearing regarding the second application for the same service, which was voluntarily dismissed.

■ The doctrines of *res judicata* and collateral estoppel preclude relitigation of claims or issues which were litigated or could have been litigated in a prior action. *Scholler v. Scholler* (1984), 10 Ohio St.3d 98, 10 OBR 426, 462 N.E.2d 158. Both doctrines are applicable to administrative hearings of a quasi-judicial nature. *Id.; Scott v. E. Cleveland* (1984), 16 Ohio App.3d 429, 430, 16 OBR 500, 501, 476 N.E.2d 710, 712–713. Administrative proceedings are deemed quasi-judicial if notice, a hearing and an opportunity to introduce evidence are afforded. *Superior's Brand v. Lindley* (1980), 62 Ohio St.2d 133, 136, 16 O.O.3d 150, 151–152, 403 N.E.2d 996, 999–1000. "Determinations made in administrative proceedings are given preclusive effect (1) only if the parties had a full and fair opportunity to litigate the matters involved and (2) if the proceedings culminated in a definitive resolution of the matters." *Gerstenberger v. Macedonia* (1994), 97 Ohio App.3d 167, 172–173, 646 N.E.2d 489, 493. Thus, it is clear that an administrative agency must actually render a valid and final judgment upon the merits of an action before the doctrine of *res judicata* may be applied.

In the instant case, the ODH decision to deny the second CON application was not quasi-judicial in nature. Before reaching its decision, ODH did not conduct an adjudicatory hearing; appellees had no opportunity before ODH to formally present evidence or cross-examine witnesses. Indeed, ODH has no statutory authority to conduct hearings and make final adjudication orders regarding CON applications. Rather, R.C. 3702.591 vests this adjudicatory authority in the board. As noted by the Supreme Court of Ohio in *In re Timken Mercy Med. Ctr.* (1991), 61 Ohio St.3d 81, 86, 572 N.E.2d 673, 676, ODH merely has the "authority to reach initial determinations on CON applications." Furthermore, this court

has noted that an ODH decision regarding a CON is not an "adjudication" from which a judicial appeal may be taken; rather, an "adjudication" is based only upon a decision of the board. *In re Cleveland Clinic Found.* (1994), 94 Ohio App.3d 348, 353–354, 640 N.E.2d 900, 903–904.

Appellees voluntarily dismissed the appeal prior to an adjudication hearing before the board; therefore, no evidence was presented to the board, nor did the board adjudicate the parties' claims. ODH contends that since appellees had the "opportunity" to adjudicate the merits of the second application before the board, the doctrine of *res judicata* must apply. However, as noted previously, the board must have held an adjudication hearing and actually rendered a decision on the merits for appellees to have had this opportunity. Due to the prehearing voluntary dismissal, no evidence was submitted before the board; thus, the parties did not have a full and fair opportunity to litigate the matters involved nor did the proceedings culminate in a definitive resolution of the matter.

ODH further relies on the Supreme Court of Ohio's decision in *Fairview Gen. Hosp. v. Fletcher* (1992), 63 Ohio St.3d 146, 586 N.E.2d 80, in support of its *res judicata* argument. In that case, relator's CON application was denied by ODH. Relator appealed the denial to the CONRB, but voluntarily dismissed the appeal before a judgment was issued by the board. During the interim between the filing and voluntary dismissal of its administrative appeal, relator filed a complaint in the common pleas court seeking a declaratory judgment and a writ of mandamus. The Supreme Court of Ohio affirmed this court's dismissal of the complaint because relator failed to exhaust its administrative appeal remedy before the board. ODH argues that the decision in *Fairview* is applicable to the instant case. We disagree.

The Supreme Court's holding in *Fairview* merely stands for the proposition that the common pleas court lacked jurisdiction to issue a declaratory judgment for the reason that the declaratory judgment action was an inappropriate means of contesting a reviewability determination of the director of ODH and an attempt to circumvent the statutory administrative appeal process. Since the decision of the director was not appealed to the CONRB, it was final and not subject to collateral attack through a court action. Appellees acknowledge that ODH's denial of the second CON application is final and not subject to collateral attack through a court action since appellees dismissed their appeal before the board. However, there has been no attempt by appellees to circumvent the statutory appeal process regarding its first CON application. Thus, the "exhaustion of administrative remedies" doctrine articulated in *Fairview* has no bearing on the *res judicata* argument advanced by ODH. Accordingly, the first assignment of error is not well taken.

■ The third, fourth, fifth and sixth assignments of error are interrelated and will be addressed together. By these assignments of error, ODH contends the board erred in (1) relying on factual matters specifically vacated by the court of appeals in *Lima I*, (2) permitting the aggregation of cardiac catheterization procedures from two different, geographically separated catheterization labs in separate hospitals to meet the requirements of Ohio Adm.Code 3701–12–24, (3) precluding the introduction of evidence other than that related to the eight-hundred-catheterization procedures requirement, and (4) granting the CON, as the board's decision is not supported by reliable, probative and substantial evidence and is not in accordance with law.

In *Lima I*, this court found that reliable, probative and substantial record evidence supported the board's findings regarding the history of the joint project, the need for the proposed open-heart surgery service and the expected quality of the service. Only that portion of the board's decision allowing projected, rather than actual, reported catheterization numbers was found objectionable by this court. Indeed, this court stated:

"Ohio Adm.Code 3701–12–24(I) is both specific and clear when it mandates an average of at least eight hundred catheterization procedures per laboratory during the most recent calendar year for which a hospital has filed its 'Annual Hospital Registration Report.' We are not at liberty to ignore its mandate, even though the mandate seems unreasonable in its effect here. The purpose of Ohio Adm.Code 3701–12–24(I) is to cause open-heart surgery service to be permitted only in hospitals which demonstrate sufficient need. Here, the need was demonstrated before the board by other evidence and by the projections for calendar year 1992. *Indeed, if the number of procedures for the whole of 1992 corresponded with the projection at mid-year, and the 'Annual Hospital Registration Report' has been filed for 1992, we perceive nothing in this record which would prevent the CON from being awarded.* But, again, we do not feel that we are at liberty to ignore the specific requirements of Ohio Adm.Code 3701–12–24(I) * * *." (Emphasis added.) *Lima I.*

Accordingly, this court rejected each of ODH's arguments except as to Ohio Adm.Code 3701–12–24(I) and reversed the judgment and remanded the cause to the board for further proceedings regarding the eight-hundred-catheterization procedures issue. Thus, this court's finding that reliable, probative and substantial evidence in the record supported the board's finding regarding all issues, other than the eight-hundred-catheterization procedure issue, became the law of the case. This court did not, as ODH suggests, vacate all factual and legal findings made by the board.

Indeed, this conclusion is apparent from this court's opinion in *Lima II*, wherein this court admonished the board for its failure to adhere to the court's

findings in *Lima I* regarding the dual site nature of the program, its satisfaction of the required regulatory procedural volumes and the expected quality of the program. This court stated:

"It was not appropriate for the board to reopen issues which had been decided by this court's decision and the law of the case, even if the board felt this court to be incorrect. The law-of-the-case doctrine prevents such actions. See, *Nolan v. Nolan* (1984), 11 Ohio St.3d 1, 11 OBR 1, 462 N.E.2d 410, syllabus." *Lima II.*

ODH further argues the board erred in permitting the aggregation of cardiac catheterization procedures from two different catheterization laboratories to meet the requirements of Ohio Adm.Code 3701–12–24. Initially, we note that in *Lima II*, this court chastised the board for failing to follow this legal interpretation on remand from *Lima I.* This court held that such conduct was "not appropriate" and stated that "[a]lthough this court may, under appropriate circumstances, reexamine the law of the case established by an earlier judgment of this court, we find that not to be appropriate here." *Id.*

ODH now suggests the Ohio Supreme Court's holding in *In re Mansfield Gen. Hosp.* (1995), 72 Ohio St.3d 236, 648 N.E.2d 1346, which was decided after this court's opinion in *Lima II*, but prior to the administrative hearing on remand, requires modification of this court's prior construction of Ohio Adm.Code 3701–12–24(I). We disagree.

In *Mansfield*, the hospital submitted a CON application to establish a cardiac catheterization laboratory, not an open-heart surgery program as in the instant case. ODH maintains separate regulatory review criteria for cardiac catheterization applications, which are reviewed under Ohio Adm.Code 3701–12–25. At issue in *Mansfield* was whether the hospital, which had an existing cardiac catheterization laboratory, was subject to the special review criteria contained in Ohio Adm.Code 3701–12–25, including the requirement under Ohio Adm.Code 3701–12–25(L) of having on-site open-heart surgery capabilities when the service treats or will treat high-risk patients. This criteria must be established if the hospital proposes to establish a new cardiac catheterization service or if it seeks to add additional cardiac catheterization laboratories to an existing service. Ohio Adm.Code 3701–12–25(A)(1) and (2).

The hospital argued successfully before this court that, since it already had a cardiac catheterization laboratory in place and did not intend to erect a new physical facility, its CON application was not controlled by Ohio Adm.Code 3701–12–25(A)(1) and (2). This court interpreted the phrase "cardiac catheterization service" in terms of physical facilities and accordingly held that since the hospital was not constructing a new facility, Ohio Adm.Code 3701–12–25 was inapplicable to the CON application.

The Supreme Court of Ohio reversed, holding that the term "cardiac catheterization service" could not be interpreted only in terms of physical facilities. In so doing, the Supreme Court distinguished a laboratory, which includes the physical facilities, from the service, which is what is provided in the labs. However, the court's decision does not mention the regulation at issue in the instant case, Ohio Adm.Code 3701–12–24, and we will not extend the court's interpretation of Ohio Adm.Code 3701–12–25(L) to the regulation at issue herein.

In addition, ODH reasserts its former view that Ohio Adm.Code 3701–12–24(I) requires an average of eight hundred catheterization procedures per laboratory, not per service. However, this court rejected the identical argument in *Lima I.* As this court's construction of Ohio Adm.Code 3701–12–24(I) became law of the case in *Lima I,* we will not disturb such interpretation.

ODH further asserts that the board erred in precluding ODH from introducing additional evidence on issues other than the eight-hundred-catheterization requirement. More specifically, ODH argues that this court's remand did not limit the board's review solely to whether eight hundred catheterizations were performed; rather, the board was required to conduct a new hearing on the merits of this application. Again, we disagree.

Both *Lima I* and *II* clearly state that the only additional facts necessary to the record to support approval of the project were findings related to appellees' actual performance of the requisite eight hundred catheterizations. For example, in *Lima I,* this court found the board's findings on need and quality met the reliable, probative and substantial evidence test. Indeed, the court emphasized that there was "nothing in this record which would prevent the CON from being awarded." *Lima I.* Moreover, in *Lima II,* this court reemphasized that the only "new" findings necessary to the record pertain to whether appellees' catheterization volume exhibits compliance with Ohio Adm.Code 3701–12–24(I).

ODH asserts the following passage in *Lima II* supports its position:

"Therefore, the board should have conducted further proceedings and given proper consideration to this evidence on remand in addition to considering the record which already exists. It is necessary to make new findings of fact which support any action which the board decides to take." *Id.*

We agree with appellees' interpretation of this remand instruction, *i.e.,* that the "this evidence" to which this court referred consisted of evidence on the eight-hundred-catheterizations issue; thus, the board was to make new findings of fact regarding only that issue. New findings which indicate whether appellees met the eight-hundred-catheterizations requirement are necessary regardless of the board's final decision. Additionally, the board must adhere to its original findings in the record, as affirmed by this court, in issuing its final order.

Lastly, ODH argues that the decision of the board is not supported by reliable, probative and substantial evidence because the board made findings only as to the number of catheterizations performed and did not address any other issues.

Our standard of review is set forth in R.C. 3702.60(E)(3), which states:

"The court shall affirm the board's order if it finds, upon consideration of the entire record * * * that the order is supported by reliable, probative, and substantial evidence and is in accordance with law. In the absence of such a finding, it shall reverse, vacate, or modify the order."

As noted several times throughout this opinion, this court's remand instructions mandated that the board consider only that evidence regarding the number of catheterization procedures performed. It is undisputed that appellees have established the performance of over eight hundred catheterizations for 1994.[2] Thus, there is reliable, probative and substantial evidence to support the board's finding. Accordingly, the third, fourth, fifth and sixth assignments of error are not well taken.

■ By the second assignment of error, ODH argues that the board erred in granting the CON as the board did not obtain five lawful votes of its members in favor of the application.

Board membership is defined by and limited to the criteria specified in R.C. 3702.59, which states:

"(A) There is hereby created the certificate of need review board that shall consist of the following members:

"(1) The chairpersons of the standing committees of the senate and the house of representatives that have primary responsibility for the consideration of health legislation."

Besides the two aforementioned legislative members, membership on the board consists of one member of the public appointed by the President of the Senate, one member of the public appointed by the Speaker of the House of Representatives, and five members of the public appointed by the Governor with the advice and consent of the senate. See R.C. 3702.59(A)(2) and (3).

---

2. Ohio Adm.Code 3702–2–06(B) sets forth items which shall be considered by the board as follows:

"Any evidence, facts, or information contained in the director of health's record as well as evidence, facts, or information which were discovered or came into existence from the date of the original submission of the application for the certificate of need to the date of the final decision of the board shall, if properly presented and relevant, be considered by the board."

This court applied this rule in our prior opinions to permit consideration of the additional evidence as to the years 1992 and 1993 and in light of the time of the board decision in the instant case, it permits consideration of new 1994 evidence.

R.C. 3702.59(B) provides:

"(B) * * * A majority of the members of the board constitutes a quorum for purposes of conducting business, and a majority vote of all board members is necessary before action may be undertaken."

Thus, the plain language of the statute requires that a majority, *i.e.*, five members of the board agree on any decision. See *In re Boardman Outpatient Surgery Ctr. Inc.* (Mar. 31, 1995), Franklin App. No. 94APH09–1311, unreported, 1995 WL 141061. In addition, R.C. 3702.59(F) provides:

"In the event of the absence, illness, disability, death, or resignation of a legislative member, *any member of the standing committee of which he is chairperson may serve in his absence * * *. Members serving in the absence of the senate committee chairperson shall be appointed by the president of the senate.*" (Emphasis added.)

Thus, the General Assembly has expressly stated that in the event of the absence of the Senate committee chairperson, only members of the standing committee of which the senator is chairperson may serve in the senator's absence, and only after such member has been appointed to the board by the President of the Senate.

At the July 27, 1995 board meeting, Senator Bruce Johnson appeared and voted in the absence of Senator Grace Drake, Chair of the Senate Health Committee. By a five-to-two vote, the board voted to adopt the findings of the hearing examiner and grant the CON. Senator Johnson voted with the majority; however, Senator Johnson was not and is not a member of the Senate Health Committee and was not appointed by the President of the Senate; thus, he could not be appointed to replace Senator Drake on the board and could not vote as a board member.

Accordingly, ODH contends that, because Senator Johnson was ineligible to participate in the board's July 27, 1995 proceeding, only four members of the board voted to adopt the hearing examiner's report and approve the CON; therefore, the board vote granting the CON was invalid and the decision to deny the CON made by the director of ODH on December 20, 1991 must be "deemed" to be the decision of the board pursuant to R.C. 3702.60(D).[3]

---

3. R.C. 3702.60(D) states:

"The decision of the board shall be issued within thirty days after the expiration of the time for filing objections to the report and recommendation of the hearing examiner under section 119.09 of the Revised Code * * *. However, if a majority of the members of the board, after due consideration and deliberation, fails to approve or disapprove the decision of the hearing examiner * * *, the decision or ruling of the director of health shall be considered as the final decision or order of the board * * *."

Appellees do not dispute the fact that Senator Johnson neither was a member of the Senate Health Committee nor was appointed to the board by the President of the Senate at the time he voted on this project; rather, appellees argue that Senator Johnson's vote was valid because he was sitting as Senator Drake's temporary "designee" and "voting proxy" only for purposes of the July 27, 1995 meeting and was not permanently replacing Senator Drake as the senatorial representative on the board. Appellees contend that R.C. 3702.59(F) describes the eligibility requirements only for legislative members who are expected to serve *prolonged periods of time* on the board due to the *extended* absence, illness, disability, death or resignation of an existing board member, or are to serve on the board in a permanent capacity. We disagree.

There is no statutory authority for proxy voting; rather, R.C. 3702.59(F) sets forth specific criteria for board membership, voting and replacement. Indeed, there would be no need for qualifications to vote in a legislative member's absence if a proxy vote were available.

Similarly, there is no statutory authority for temporary voting. Appellees claim that the criteria for membership do not apply to temporary replacement, but only to "prolonged periods of time on the board due to extended absence, illness, disability, death or resignation of an existing board member." However, the words "prolonged periods of time" and "extended" appear nowhere in this statute.

■ Accordingly, we conclude that, because Senator Johnson was ineligible to vote at the July 27, 1995 proceeding, the vote by the CONRB granting the CON was unlawful and invalid. However, under the unique circumstances of this case, we do not agree that the "deemer" provision of R.C. 3702.60(D) should operate to resurrect the director's December 21, 1991 denial of the CON as the final order of the board, in light of the fact that there have been five intervening decisions of this court and the board in the five years since the director's denial of CON.

As set forth in both *Lima I* and *II,* the sole reason for remanding this cause to the board for the second time was for the purpose of determining whether appellees satisfied the eight-hundred-catheterizations requirement set forth in Ohio Adm.Code 3701–12–24(I). According to *Lima I,* appellees' satisfaction of this last remaining regulatory requirement means that there is "nothing in this record which would prevent the CON from being awarded." *Lima I. Lima II* clarified that all the board was required to do on remand was to consider additional evidence and make findings as to whether appellees performed at least 800 annual catheterizations.

On remand, the board followed this court's instructions and adjudicated the issue of appellees' compliance with Ohio Adm.Code 3701–12–24(I). ODH and appellees stipulated at the remand hearing that appellees performed over eight hundred catheterizations in 1994, as reflected in their submitted annual hospital registration reports. Both the hearing examiner and the board made this finding on remand below. Thus, it is undisputed that appellees have satisfied the eight-hundred-catheterizations requirement. The record now contains reliable, probative and substantial evidence to support the board's grant of the CON. Indeed, the record evidence, combined with the law of the case as established in *Lima I* and *II,* demands approval of the CON. To do as ODH suggests and "deem" the CON denied, pursuant to the director's decision of December 21, 1991, would be in direct contravention of this court's express mandates in *Lima I* and *II.* Thus, we decline to apply the "deemer" provision of R.C. 3702.60(D) in this particular circumstance. However, in light of the invalid board vote taken at the July 27, 1995 proceeding, we must remand the cause to the board for the purpose of taking another vote before a properly constituted board, with instructions to grant the CON, as all requirements under Ohio Adm.Code 3701–12–24 have now been met. Accordingly, the second assignment of error is well taken.

For the foregoing reasons, the first, third, fourth, fifth and sixth assignments of error are overruled, the second assignment of error is sustained and the order of the Certificate of Need Review Board granting the certificate of need is reversed, and this cause is remanded to that board for further proceedings in accordance with law and consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

TYACK and DESHLER, JJ., concur.