OPINION
Plaintiff-appellant, the Ohio Motor Vehicle Salvage Dealers Licensing Board (hereinafter Board), appeals the decision of the Columbiana County Court of Common Pleas, ordering appellant to issue a salvage dealer's license to defendant-appellee, Westward Auto, Inc.
In 1987, appellee applied for the annual renewal of its motor vehicle salvage dealer's license. The Ohio Registrar of Motor Vehicles (hereinafter Registrar) denied appellee's application, finding that appellee's business was not being operated primarily for the purpose of selling salvage motor vehicle parts at retail, as required by R.C. 4738.03(A). In arriving at this decision, the Registrar noted that appellee had calculated its percentage of sales based on "unit volume," whereas the Registrar had previously determined that the proper means for deciding whether or not a business was being operated primarily for the purpose of selling salvage motor vehicle parts at retail was the percentage of sales based on "dollar volume."
Appellee appealed the Registrar's decision, and a hearing was held before the Board on August 13, 1987. Part way through the hearing the matter was continued, whereupon appellee wrote to the Board requesting that the matter be continued further until such time as the Registrar had reconsidered a number of other applications which had been similarly denied. On March 15, 1988, appellee received a letter from the Ohio Bureau of Motor Vehicles (hereinafter Bureau) stating in part as follows:
 "The Registrar has had an opportunity to review the pending appeals for the purposes of reconsideration. Licenses are being renewed in nearly all of those cases. Consequently, we expect very few, if any, appeals as a result of the reconsideration process. In light of this result, you may wish to reconsider whether to proceed with the appeal, or to apply for reconsideration before the Registrar.
 "The fact that the reconsideration process resulted in a large number of renewals is due to the Bureau's modification of its approach to the enforcement of the provisions of House Bill No. 755 which gave rise to the large number of renewal application denials. Under this new policy, any person who is primarily engaged in selling salvage motor vehicle parts, salvage motor vehicles, or gradable scrap metal may qualify for a salvage dealer license without regard to whether the sales of salvage parts are retail sales and without regard to whether the income from the sales of salvage parts exceeds the income from the other aspects of the business."
Appellee then filed a Motion for Reconsideration with the Board requesting that appellee's application be remanded to the Registrar for reconsideration in light of the new policy of enforcement adopted by the Bureau. On February 14, 1989, the Board sustained appellee's motion, and ordered that the matter be remanded to the Registrar. In an order dated February 14, 1989, the Registrar reversed its prior decision and renewed appellee's salvage dealer's license for the 1987 and 1988 licensing years.
For a period of time thereafter, the Bureau maintained its policy of renewing salvage dealer's licenses to anyone engaged in the sale of salvage motor vehicle parts, salvage motor vehicles, or gradable scrap metal, without regard to the percentage of income derived from parts sales. However, sometime in 1990, the Bureau returned to its previous position of issuing licenses only to salvage dealers who were primarily engaged in the business of selling salvage motor vehicle parts.
Both parties agree that renewal application forms in use since 1990 specifically ask the applicant whether or not the business is being operated primarily for the purpose of selling salvage motor vehicle parts and secondarily for the purpose of selling salvage motor vehicles or gradable scrap metal. Each year, from 1990 to 1992, appellee answered this question in the affirmative and his license was renewed. However, from 1993 to 1996, appellee answered "no" to the same question. Nothwithstanding appellee's admission that the business was not primarily engaged in the sale of salvage motor vehicle parts, appellee's license was renewed each year because of clerical errors on the part of the Bureau.
In 1997, appellee again filed a license renewal application stating that the business was not being operated primarily for the purpose of selling salvage motor vehicle parts. After reviewing this renewal application, the Bureau conducted an investigation and inspection of appellee's business. On August 1, 1997, the Registrar notified appellee that its renewal application had been denied. The Registrar noted that appellee did not sell more salvage motor vehicle parts than salvage motor vehicles as required by R.C. 4738.03(A), and that appellee's salvage inventory was not being stored behind a shielded area as required by Ohio Adm. Code 4501:1-4-04(A)(5).
On August 29, 1997, appellee appealed the Registrar's decision to the Board. Appellee, represented by company president Bernard Wittenmyer, appeared with counsel before the Board on February 10, 1998. The first witness to testify was Jeff Coleman, Chief of the Dealer Licensing Division, and record keeper for the Board. Coleman testified that in 1986 the Bureau's position had been that the law required a salvage dealer to be primarily engaged in the sale of salvage motor vehicle parts in terms of the dollar volume of overall sales. Coleman also stated that for a short period of time leading up to and ending in 1990, the Bureau's policy had changed to allow licenses to any business engaged in the sale of salvage motor vehicle parts, irrespective of the degree to which the applicant was engaged in the sale of salvage motor vehicles or gradable scrap metal. However, in 1990 the Bureau reversed itself and began enforcing its original position. With respect to the period from 1993 to 1996, Coleman testified that although appellee had stated in each license renewal application that it was not engaged primarily in the sale of salvage motor vehicle parts, appellee's license had been renewed each time due to clerical oversights on the part of Bureau employees, which employees had been subsequently disciplined.
Wittenmyer then testified on behalf of appellee. Wittenmyer stated that as a result of having his license renewed in 1989 he had built two new buildings, moved a house to another part of the property, and built a parking area. In effect, Wittenmyer claimed to have expended approximately $625,000 on these expenditures in reliance on the Registrar's order of February 14, 1989 renewing appellee's salvage dealer's license.
With respect to the issue of whether appellee was engaged primarily in the sale of salvage motor vehicle parts, Wittenmyer conceded that in terms of dollar volume appellee received more income from the sale of salvage motor vehicles than from the sale of salvage motor vehicle parts, although appellee sold more parts than vehicles. At one point during the hearing Wittenmyer was asked why appellee had answered "no" in 1993 and subsequent years to the question on the renewal application form asking whether the applicant was engaged primarily in the sale of salvage motor vehicle parts. The dialogue was as follows:
"BY MR. PAXTON [counsel for appellee]:
 "Q. Well, you were being honest in the application?
 "A. Right. Over a period of time, there is absolutely no use for me to try to be primarily in parts. I am not primarily in parts. I never was. I tried two or three years to do my best. I do not have the retail business to come in off the streets to sell the amount of parts needed to sell to be primarily, in my own opinion, parts dealer." (Tr. 30)
Wittenmyer admitted that he was aware that appellee was required to sell more parts than vehicles in terms of dollar volume in order to hold a salvage dealer's license but stated that in his opinion it was impossible to do and that the main thrust of appellee's business was the sale of salvage motor vehicles. Wittenmyer also admitted to being in violation of Ohio Adm. Code 4501:1-4-04(A)(5). Finally, Wittenmyer alleged that one of the Board members, Allan Weinblatt, had threatened Wittenmyer on a previous occasion. Weinblatt denied the allegation, but voluntarily removed himself from further consideration of appellee's case.
On February 24, 1998, the Board issued an adjudication order affirming the Registrar's denial of appellee's license renewal application. Appellee filed an appeal in the Columbiana County Court of Common Pleas on March 9, 1998. Following the filing of briefs, on September 22, 1998, the trial court issued a judgment entry reversing the Board's decision and ordering the Board to issue a license to appellee. Specifically, the trial court found that the Board's decision was not supported by reliable, probative and substantial evidence, that the doctrine of resjudicata precluded the denial of appellee's salvage dealer's license, and that the Board was precluded from denying appellee a license on the basis of equitable estoppel. It is from this decision of the trial court that appellant brings this timely appeal.
Appellant brings three assignments of error, the first of which states:
 "THE COMMON PLEAS COURT ABUSED ITS DISCRETION AND ERRED AS A MATTER OF LAW WHEN IT DETERMINED THAT THE DECISION OF THE SALVAGE BOARD WAS NOT SUPPORTED BY RELIABLE, SUBSTANTIAL AND PROBATIVE EVIDENCE AND WAS NOT IN ACCORDANCE WITH LAW, AND WHEN IT SUBSTITUTED ITS JUDGMENT FOR THAT OF THE SALVAGE BOARD."
Appellant argues that its decision to affirm the Registrar's denial of appellee's renewal application was supported by reliable, substantial and probative evidence and was made in accordance with the law. Appellant argues that appellee is not engaged primarily in the business of selling, at retail, salvage motor vehicle parts as required by R.C. 4738.03(A). Appellant relies on Baughman v. Dept. of Pub. Safety Motor Vehicle Salvage
(1997), 118 Ohio App.3d 564, for the proposition that in order to determine if the retail sale of salvage motor vehicle parts is principally or primarily the business of a salvage dealer, it is necessary to look to the totality of the circumstances. Appellant contends that the totality of the circumstances in the instant case show that appellee was not primarily engaged in the business of selling salvage motor vehicle parts as required by R.C.4738.03(A).
Decisions made by administrative agencies in Ohio may be appealed to the court of common pleas pursuant to R.C. 119.12, which provides, in pertinent part, as follows:
 "The court may affirm the order of the agency complained of in the appeal if it finds, upon consideration of the entire record and such additional evidence as the court has admitted, that the order is supported by reliable, probative, and substantial evidence and is in accordance with law. In the absence of such a finding, it may reverse, vacate, or modify the order or make such other ruling as is supported by reliable, probative, and substantial evidence and is in accordance with law.
"* * *
 "The judgment of the court shall be final and conclusive unless reversed, vacated, or modified on appeal. Such appeals may be taken either by the party or the agency, shall proceed as in the case of appeals in civil actions, and shall be pursuant to the Rules of Appellate Procedure and, to the extent not in conflict with those rules, Chapter 2505. of the Revised Code. Such appeal by the agency shall be taken on questions of law relating to the constitutionality, construction, or interpretation of statutes and rules of the agency, and in such appeal the court may also review and determine the correctness of the judgment of the court of common pleas that the order of the agency is not supported by any reliable, probative, and substantial evidence in the entire record."
Thus, in reviewing an administrative order, a trial court is required to affirm the decision if it is supported by reliable, probative, and substantial evidence. VFW Post 8586 v. Ohio LiquorControl Comm. (1998), 83 Ohio St.3d 79, 81. An agency's findings of fact are presumed to be correct and must be deferred to by a reviewing court unless that court determines that the agency's findings are internally inconsistent, impeached by evidence of a prior inconsistent statement, rest upon improper inferences, or are otherwise unsupportable. Ohio Historical Soc. v. State Emp.Relations Bd. (1993), 66 Ohio St.3d 466, 471. With respect to purely legal questions, however, the court is to exercise independent judgment. VFW Post 8586, supra, at 82.
Upon further review, the role of an appellate court is more limited than that of the trial court. Rossford Exempted VillageSchool Dist. Bd. of Edn. v. State Bd. of Edn. (1992), 63 Ohio St.3d 705,707. An appellate court is restricted to ascertaining whether, in reaching its decision, the trial court abused its discretion. Id. The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219.
Motor vehicle salvage dealers are licensed in Ohio pursuant to R.C. 4738.03(A), which provides:
 "No person licensed as a motor vehicle salvage dealer under this chapter shall engage in the business of selling at retail salvage motor vehicle parts or salvage motor vehicles, unless the business is operated primarily for the purpose of selling at retail salvage motor vehicle parts. Any person operating such a business primarily for the purpose of selling at retail salvage motor vehicle parts may secondarily sell at retail salvage motor vehicles or manufacture a product of gradable scrap metal for sale to scrap metal processors or any other consumer.
In addition, Section 4501:1-4-04(A) of the Ohio Administrative Code requires that the facilities used by motor vehicle salvage dealers be hidden from ordinary view by means of a fence or hedge. Section 4501:1-4-04(A)(5) provides:
 "All inventory of the business will be stored behind the fence or enclosure to promote and preserve a positive visual impact of the salvage yard's business on the surrounding neighborhood."
R.C. 4738.03 mandates that a motor vehicle salvage dealer must operate the business primarily for the purpose of selling salvage motor vehicle parts. The term "primarily" as used in R.C.4738.03(A) is not defined by that statute or by any other statute in that chapter. Baughman, supra, at 574. However, the term has been construed to mean "principally" or "of first importance."Id., at 575. Accordingly, the provisions of R.C. 4738.03(A) require that the retail sale of salvage motor vehicle parts must be the "principal" activity of the salvage dealer or "of first importance" to his business. Id.
In Baughman, supra, a salvage dealer urged the Fourth District Court of Appeals to define "primarily" in terms of the number of salvage motor vehicle parts sold versus motor vehicles sold. Id.,
at 576. However, the court declined to do so, ruling instead that "[o]ne must look to the `totality of the circumstances' involved to determine whether the retail sale of salvage motor vehicle parts is principally, or primarily, the business of the salvage dealer for purposes of R.C. 4738.03(A)." Id., at 575.
Applying this standard to the instant case, it is clear that the trial court abused its discretion in reversing the Board's decision. The Board's denial of appellee's renewal application was supported by substantial, reliable, and probative evidence. Appellee answered "no" to the question on the renewal application that asks whether the business is being operated primarily for the purpose of selling salvage motor vehicle parts. Wittenmyer admitted before the Board that the "main thrust" of the business came from the sale of salvage motor vehicles, which he also conceded was the quickest source of profit in the salvage business. According to Wittenmyer, appellee was not primarily engaged in the sale of parts and never had been.
In addition, during the investigation conducted by the Bureau in 1997, appellee advised investigators that the retail sale of salvage motor vehicle parts was approximately 5 percent of appellee's business. From the aforementioned testimony and evidence, it is clear that the retail sale of salvage motor vehicle parts is not the principal activity of, nor of first importance to, appellee's business.
The trial court also abused its discretion in reversing the Board's decision with respect to appellee's violation of Ohio Adm. Code 4501:1-4-04(A)(5). The Bureau's investigation revealed that appellee's vehicles "were not stored within the shielded area" as required by Ohio Adm. Code 4501:1-4-04(A)(5). (Ex. 15). Wittenmyer substantiated the investigative report as follows:
 "Larry's [the investigator] indicated that all salvage motor vehicles are to be behind a fenced-in area, a closure where they cannot be seen from the highway. We've had some salvage vehicles in the front lot but that can be corrected. There is no problem with moving those to the back lot." (Tr. 28)
Whether or not appellee was in a position to remedy the situation to avoid future violations, the evidence was uncontraverted that appellee was in violation of Ohio Adm. Code 4501:1-4-04(A)(5). As such, the Board's decision was supported by substantial, reliable, and probative evidence.
In reviewing the decision of an administrative agency pursuant to an R.C. 119.12 appeal, a common pleas court is required to affirm if the agency's order is supported by reliable, probative, and substantial evidence and is in accordance with law. VFW Post8586, supra, at 81. In the instant case the trial court abused its discretion by substituting its judgment for that of the Board, despite the presence of overwhelming and uncontroverted evidence that appellee did not meet the statutory criteria for retaining a salvage dealer's license.
Accordingly, appellant's first assignment of error is found to have merit.
Appellant's second assignment of error states:
 "THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED AS A MATTER OF LAW WHEN IT DETERMINED THAT THE DOCTRINE OF RES JUDICATA PRECLUDED THE DENIAL OF THE RENEWAL OF WESTWARD'S SALVAGE DEALERS [sic] LICENSE."
Appellant argues that the Registrar's previous issuance of a license in July of 1987 was not grounds for the application ofres judicata because the Board's action in remanding the matter back to the Registrar did not constitute a final judgment on the merits. Appellant cites In re Lima Mem. Hosp. (1996), 111 Ohio App.3d 225, in support of its claim that before res judicata can apply to an administrative agency, the administrative agency must render a valid and final judgment upon the merits of an action.
In addition, appellant argues that even if the Board had made a final judgment upon the merits, res judicata does not apply in this case because the reversal by the Registrar applied only to the renewal of appellee's license for the 1987-1988 licensing year, and therefore did not affect any subsequent renewals. In support of this position, appellant relies on Hubbard Press v.Tracy (1993), 67 Ohio St.3d 564, and argues that res judicata
cannot apply where there has been a change of facts which raises a new material issue.
In response, appellee argues that the Board's 1987 remand to the Registrar constituted a final adjudication on the merits. Appellee argues that the parties had a full and fair opportunity to litigate the matters involved and that the administrative proceedings culminated in a definitive resolution of the matter. Specifically, appellee points to the language used in the Board's remand order which states as follows:
 "Upon consideration of the testimony and evidence adduced during the hearing and upon a `motion for reconsideration' and `memorandum in support', the Motor Vehicle Salvage Dealers [sic] Licensing Board hereby Orders that this matter be remanded to the Registrar of Motor Vehicles for reconsideration of his July 28, 1987 denial."
In addition, appellee claims that because both parties were entitled to appeal the remand order such was a final determination on the merits.
The doctrine of res judicata involves both claim preclusion (historically called estoppel by judgment in Ohio) and issue preclusion (traditionally known as collateral estoppel). Grava v.Parkman Twp. (1995), 73 Ohio St.3d 379, 381. With regard to the claim-preclusive effect of the doctrine of res judicata, the Supreme Court of Ohio has stated that a final judgment or decree rendered upon the merits, without fraud or collusion, by a court of competent jurisdiction is a complete bar to any subsequent action on the same claim or cause of action between the parties or those in privity with them. Id.
Similarly, the doctrine of issue preclusion holds that a fact or a point that was actually and directly at issue in a previous action, and was passed upon and determined by a court of competent jurisdiction, may not be drawn into question in a subsequent action between the same parties or their privies, whether the cause of action in the two actions be identical or different. Ft. Frye Teachers Ass'n, OEA/NEA v. State Emp.Relations Bd. (1998), 81 Ohio St.3d 392, 395. "In short, under the rule of collateral estoppel, even where the cause of action is different in a subsequent suit, a judgment in a prior suit may nevertheless affect the outcome of the second suit." Id.
 Res judicata, whether claim preclusion or issue preclusion, applies to administrative proceedings that are of a judicial nature and where the parties have had an ample opportunity to litigate the issues involved in the proceeding. Grava, supra, at 381. In order for a prior decision to act as a bar there must be identity of parties or their privies and identity of issues.Jacobs v. Teledyne, Inc. (1988), 39 Ohio St.3d 168, 169-170. Determinations made in administrative proceedings are given preclusive effect (1) only if the parties had a full and fair opportunity to litigate the matters involved and (2) if the proceedings culminated in a definitive resolution of the matters.Gerstenberger v. Macedonia (1994), 97 Ohio App.3d 167, 172-173.
Thus, it is clear that an administrative agency must actually render a valid and final judgment upon the merits of an action before the doctrine of res judicata may be applied. Lima Mem.Hosp., supra, at 229. Moreover, while res judicata does apply to administrative proceedings, it should be applied with flexibility. Evangelinos v. Ohio Div. of Reclamation (1997),117 Ohio App.3d 720, 724. The doctrine should be qualified or rejected when its application would contravene an overriding public policy or result in manifest injustice. Jacobs, supra, at 171.
In the instant case, in reversing the Board's decision the trial court stated as follows:
 "The Court believes that the prior decisions by the Board, without any additional evidence having been presented, are `Res judicata,' and that the orders of remand and reconsideration are binding. A determination was already made that Appellant's business activities were in conformity with Revised Code Section 4738.03. See Lima Memorial Hospital, et al. v. Ohio Department of Health [sic] (1996) 675 N.E.2d 1320, 111 Ohio App.3d 225."
We find that the trial court erred in its application of resjudicata in the instant case. It is clear that the Board's order remanding the Registrar's denial did not constitute a definitive resolution of the issue of whether appellee was primarily engaged in the sale of salvage motor vehicle parts. Although appellee appeared before the Board for a hearing, upon the motion of appellee, the matter was remanded to the Registrar for reconsideration. As such, the Board never determined whether appellee was primarily engaged in the sale of salvage motor vehicle parts. Simply remanding a matter for further proceedings does not constitute a valid and final judgment upon the merits. See Ameigh v. Baycliffs Corp. (1998), 81 Ohio St.3d 247, 250
("Where a reviewing tribunal reverses the judgment of a lower tribunal on the grounds that the lower tribunal had no jurisdiction to act, the judgment of the reviewing tribunal is not a judgment on the merits and is not res judicata as to a future cause of action seeking adjudication upon the merits.").
Even if the Board's remand order had constituted a definitive resolution of the matter, res judicata in this case would still be inappropriate. The matter before the Board in 1989 was whether or not appellee was primarily engaged in the sale of salvage motor vehicle parts for the licensing year 1987-1988. R.C.4738.05 provides in pertinent part as follows:
 "All licenses issued or renewed each year shall expire on the last day of July unless sooner suspended or revoked, and each motor vehicle salvage dealer * * * licensed during any year shall, before the first day of August each year, file an application, in a form as the registrar prescribes, for the renewal of the license."
As such, R.C. 4738.05 mandates that a motor vehicle salvage dealer apply annually for a license renewal. Renewal is not automatic, but instead the dealer must establish each year that the business is primarily engaged in selling salvage motor vehicle parts. Accordingly, had the Board's remand order constituted a final determination that appellee was primarily engaged in the sale of salvage motor vehicle parts, the preclusive effect of any such determination would have expired at the end of the 1987-1988 licensing year, at which time appellee would have again been required to establish its entitlement to a dealer's license pursuant to R.C. 4738.05.
In Hubbard, supra, the Supreme Court of Ohio addressed the applicability of res judicata under circumstances similar to the instant case. In Hubbard, a taxpayer appealed the decision of the Board of Tax Appeals (BTA) denying tax exempt status for the taxpayer's printing press for 1983. The taxpayer claimed that the BTA was collaterally estopped on the grounds that the property had previously been determined to be tax exempt at a hearing before the BTA in 1950. In rejecting the application of collateral estoppel, the court noted as follows:
 "There was a hearing before the BTA in 1950 at which the Tax Commissioner and Hubbard [taxpayer] were parties. However, it is obvious that the issue now before us involves tax year 1983, and whatever proceedings took place in the 1950 hearing did not concern tax year 1983. Thus, collateral estoppel does not apply." Id., at 565
Similarly, in the instant case the issue is whether appellee is entitled under the statutory criteria to a dealer's license for the 1997 licensing year. This was not the issue before the Board in 1989. The application of res judicata requires identity of issues. Jacobs, supra. Because different licensing years were at issue res judicata has no application to the instant case even if the Board had reached a final determination.
Because the Board's 1989 order of remand was not a definitive resolution of the matter, the trial court erred in its application of res judicata. Appellant's second assignment of error is found to have merit.
Appellant's third assignment of error states:
 "THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED AS A MATTER OF LAW WHEN IT DETERMINED THAT THE SALVAGE BOARD WAS ESTOPPED FROM AFFIRMING THE DENIAL BY THE REGISTRAR OF THE RENEWAL OF WESTWARD'S SALVAGE DEALERS [sic] LICENSE."
Appellant argues that the trial court abused its discretion when it determined that equitable estoppel applied against the Board. Appellant cites to various Supreme Court of Ohio cases for the proposition that the principle of equitable estoppel does not apply against the state, its agencies, or its agents, under circumstances involving the exercise of governmental functions. In addition, appellant argues that even if appellee was entitled to claim estoppel against the Registrar or the Board, appellee failed to show any conduct on the part of the Board or the Registrar that induced appellee to change its position in good faith reliance on the conduct, or any statements or conduct upon which appellee detrimentally relied.
In response, appellee contends that equitable estoppel can and should be applied against the state. In support of this argument, appellee cites to Pilot Oil Corp. v. Ohio Dept. of Transp. (1995),102 Ohio App.3d 278, Ruozzo v. Giles (1982), 6 Ohio App.3d 8, andShapely, Inc. v. Norwood Earnings Tax Bd. of Appeals (1984),20 Ohio App.3d 164, in all of which estoppel was applied against an administrative agency. In addition, appellee notes that Wittenmyer testified as to the money, time, and equity that had been put into the business since 1987, and claims that the business would not exist today in its current state and condition if appellee had been denied a dealer's license in 1987.
The purpose of equitable estoppel is to prevent actual or constructive fraud and to promote the ends of justice. Ohio StateBd. of Pharmacy v. Frantz (1990), 51 Ohio St.3d 143, 145. The party claiming the estoppel must have relied on conduct of an adversary in such a manner as to change his position for the worse and that reliance must have been reasonable in that the party claiming estoppel did not know and could not have known that its adversary's conduct was misleading. Id. (citing Hecklerv. Community Health Services [1984], 467 U.S. 51, 59). It is well settled that, as a general rule, the principle of estoppel does not apply against a state or its agencies in the exercise of a governmental function. Frantz, supra, at 145-146.
In Frantz, supra, a pharmacist appealed the Ohio State Board of Pharmacy's revocation of his license to practice. The pharmacist argued that the Pharmacy Board was estopped from revoking his license because he had spent money improving the pharmacy business after the Board had become aware of the violations for which the license was revoked.
The Supreme Court of Ohio refused to apply estoppel against the Pharmacy Board. In doing so, the court stated as follows:
 "The board cannot be estopped from its duty to protect the public welfare because it did not bring a disciplinary action as expeditiously as possible. If a government agency is not permitted to enforce the law because the conduct of its agents has given rise to an estoppel, the interest of all citizens in obedience to the rule of law is undermined. To hold otherwise would be to grant defendants a right to violate the law." Id., at 146 (internal citations omitted.)
Based on the facts of the instant case, it is clear that the Board was exercising a governmental function and, as such, was not subject to the application of equitable estoppel. Government functions are those duties which are imposed upon the state as obligations of sovereignty, such as protection from crime, or fires, or contagion, or preserving the peace and health of citizens and protecting their property. Ohio Dept. of Natl.Resources, Div. of Reclamation v. Hemlock Pipeline, Inc. (1991),77 Ohio App.3d 668, 670-671 (citing Wooster v. Arbenz [1927],116 Ohio St. 281, 284-285). The regulation and licensing of salvage dealers is a duty imposed upon the state under R.C. Chapter 4738. Under R.C. 4738.07(B), the Registrar is required to deny an application for a salvage dealer's license if an applicant fails to meet the statutory criteria. Because the regulation of salvage dealers is a governmental function, the trial court erred in ruling that the Board's prior decisions and policies estopped it from denying appellee a salvage dealer's license.
Accordingly, appellant's third assignment of error is found to have merit.
Having found merit to all of appellant's assignments of error, the judgment of the trial court is hereby reversed and the decision of the Board, affirming the denial of appellee's license renewal for the 1997 licensing year, is hereby reinstated.
COX, J., concurs.
WAITE, J., concurs.
APPROVED:
 ___________________________________ GENE DONOFRIO, Judge