[This opinion has been published in *Ohio Official Reports* at 86 Ohio St.3d 129.]

**HOLZEMER, APPELLEE, *v.* URBANSKI ET AL., APPELLANTS.**

**[Cite as *Holzemer v. Urbanski*, 1999-Ohio-91.]**

*Constitutional law—Full faith and credit doctrine requires that Ohio give to those acts, records, and judicial proceedings of another state the same faith and credit as they have by law or usage in the courts of the state from which they are taken—Section 1738, Title 28, U.S.Code, and Section 1, Article IV, United States Constitution, applied.*

The doctrine of full faith and credit requires that the state of Ohio give to those acts, records, and judicial proceedings of another state the same faith and credit as they have by law or usage in the courts of the state from which they are taken. (Section 1738, Title 28, U.S.Code, and Section 1, Article IV, United States Constitution, applied.)

(No. 98-1291—Submitted April 14, 1999—Decided July 28, 1999.)

APPEAL from the Court of Appeals for Lucas County, No. L-97-1257.

―――――――――――

{¶ 1} Shortly before his death, William A. Urbanski ("decedent") revised his estate plan so that many of his assets were placed into a newly created revocable trust. His sons, defendants-appellants William G. Urbanski and Jordan S. Urbanski, were named as the beneficiaries of the bulk of the property in the trust. Decedent's daughter, plaintiff-appellee Monica Holzemer, was also a beneficiary of the trust, but was not named as a beneficiary of most of the property that made up the trust corpus.

{¶ 2} Decedent died on March 3, 1995, leaving a will that treated the three children equally. However, because most of decedent's property was not to pass through the will, but was to pass through the trust described above, decedent's

estate plan allocated to Holzemer a much smaller percentage of her father's property than it did to her brothers.

**{¶ 3}** On April 25, 1995, decedent's attorney and personal representative, defendant-appellant David A. Nowicki, filed a "Petition for Commencement of [Independent] Proceedings" in Lenawee County, Michigan, Probate Court, asserting that decedent was a resident of that county, and requesting that the will be admitted to probate and that administration be granted to him. By filing for independent probate proceedings, Nowicki chose to utilize a Michigan statutory procedure whereby he, the personal representative, could administer the estate without court supervision or approval. See Mich.Comp.Laws Ann. 700.357.

**{¶ 4}** Holzemer undisputedly received notice of the Michigan probate proceedings from Nowicki and did not respond to the notice. On October 4, 1995, Nowicki filed with the Lenawee County Probate Court a "closing statement" for the independent probate, indicating that the estate had been fully administered and that there were "[n]o exceptions." On November 6, 1995, a deputy register of the probate court issued a "certificate of completion," indicating that Nowicki "appears to have fully administered the estate."

**{¶ 5}** On March 4, 1996, Holzemer filed a complaint in the Court of Common Pleas of Lucas County, claiming, *inter alia*, that the trust drawn up shortly before decedent's death was invalid. In her complaint, Holzemer alleged that, prior to the revision made shortly before decedent's death, decedent's estate plan had essentially treated the three children equally. Holzemer detailed the circumstances under which decedent had earlier created an "irrevocable" trust and had issued deeds to the three children to actually pass real property owned by him to them. Holzemer further detailed that decedent, through Nowicki, had requested the deeds back from the children, that Holzemer had surrendered her deed, and that decedent had then accomplished the revisions to his estate plan with which Holzemer takes issue.

**{¶ 6}** Holzemer claimed that the revisions to the estate plan were accomplished in circumstances involving incompetency of the decedent, undue influence, fraud, mistake, and duress. She alleged that defendants were liable, *inter alia*, for conversion for depriving her of the right to receive one-third of decedent's assets. Holzemer asked that a constructive trust be imposed for her benefit over one-third of decedent's assets, and also asked for further relief.

**{¶ 7}** In response to the complaint, defendants filed motions to dismiss and memoranda, arguing that the completed Michigan independent probate proceeding was entitled to full faith and credit in Ohio courts. Defendants contended that the Ohio trial court lacked jurisdiction over Holzemer's claims because the claims could have been raised in the Michigan probate proceedings had Holzemer taken advantage of the opportunity provided by Michigan law to convert the independent proceedings into proceedings supervised by the court. Holzemer urged in opposition that defendants' motions to dismiss were actually based on *res judicata* arguments that procedurally could not be raised in a motion to dismiss. She further contended that she was not challenging the terms of the will, but instead was challenging the validity of the acts of decedent, and of defendants, concerning the substitution of the second trust for the earlier one. She asserted that since she had had no dispute with the distributions made under the will, she should not be foreclosed from raising her claims. The trial court granted defendants' motions to dismiss.

**{¶ 8}** On appeal, the Court of Appeals for Lucas County reversed the judgment of the trial court and remanded the cause. The court of appeals held (1) that the trial court did not lack subject-matter jurisdiction over Holzemer's claims, (2) that the essence of defendants' full faith and credit argument actually relied on *res judicata* grounds for purposes of foreclosing Holzemer's claims for relief in this situation, and (3) that *res judicata* is an affirmative defense that cannot be raised in a motion to dismiss.

**{¶ 9}** Upon remand, defendants filed motions for summary judgment, arguing that *res judicata* barred Holzemer's claims because all of those claims could have been, or should have been, raised in the Michigan proceeding. Holzemer responded that the Michigan probate court's certificate of completion was not a "judgment" and therefore could not have *res judicata* effect, and also renewed her earlier arguments that *res judicata* did not bar her claims. The trial court granted summary judgment in favor of defendants.

**{¶ 10}** On appeal, the court of appeals reversed the judgment of the trial court and again remanded the cause for further proceedings, holding that the completed Michigan probate proceeding was not a *res judicata* bar to Holzemer's claims.

**{¶ 11}** This cause is now before this court upon the allowance of a discretionary appeal.

---

*Kolb & Heban, Richard Kolb* and *Kevin A. Heban,* for appellee.

*Robison, Curphey & O'Connell* and *Ronald S. Moening; Kroncke, D'Arcangelo, Sutter & Furey* and *Thomas R. Furey*, for appellants.

---

**ALICE ROBIE RESNICK, J.**

**{¶ 12}** The issue presented is whether, in the circumstances of this case, the doctrine of *res judicata* operates to preclude Holzemer from moving forward to litigate the claims set forth in her complaint. For the reasons that follow, we determine that Holzemer's claims are not precluded by *res judicata* and so affirm the judgment of the court of appeals.

**{¶ 13}** Defendants support the trial court's grant of summary judgment under Civ.R. 56, arguing that the trial court correctly found that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. Defendants in essence argue that the courts of Ohio must give full faith and credit

to the Michigan probate proceeding and that under the doctrine *of res judicata*, because Holzemer could have raised her claims in the Michigan proceeding and did not, Holzemer is now barred from raising those claims. To evaluate this argument, we must examine the terms of the Full Faith and Credit Clause, consider the application of *res judicata* to the claims, and look to Michigan law to determine whether Holzemer should be barred from raising her claims. The essence of this case is whether Holzemer had a mandatory duty to raise her claims in the completed Michigan probate proceeding, and whether her failure to raise them at that time means that she is unable to raise them now. We answer these questions in the negative.

{¶ 14} The Full Faith and Credit Clause, Section 1, Article IV, United States Constitution, provides that "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. * * * " See *Wyatt v. Wyatt* (1992), 65 Ohio St.3d 268, 269, 602 N.E.2d 1166, 1167 (pursuant to Full Faith and Credit Clause, Ohio courts must recognize the validity of judgments rendered in sister states).

{¶ 15} The doctrine of full faith and credit requires that the state of Ohio give to these acts, records, and judicial proceedings of another state the same faith and credit "as they have by law or usage in the courts of such State * * * from which they are taken." See Section 1738, Title 28, U.S.Code. Thus, Ohio courts must give the same "credit" to the Michigan probate proceeding at issue in this case as that proceeding would carry in Michigan's own courts. See *Durfee v. Duke* (1963), 375 U.S. 106, 109, 84 S.Ct. 242, 244, 11 L.Ed.2d 186, 190.

{¶ 16} We must first determine what effect or credit Michigan courts would have given to the completed expedited probate proceeding if Holzemer had attempted to file in a Michigan court a suit similar to the one she filed in Ohio, and if defendants had interposed the completed probate proceeding as a defense to attempt to bar her claims. Then, we must give the completed Michigan probate

proceeding the same effect or credit in Ohio that it would have carried in that hypothetical suit in Michigan.[1]  See *Miller v. Bock Laundry Machine Co.* (1980), 64 Ohio St.2d 265, 266, 18 O.O.3d 455, 456, 416 N.E.2d 620, 622; *Titus v. Wallick* (1939), 306 U.S. 282, 287, 59 S.Ct. 557, 560, 83 L.Ed. 653, 657.  If Holzemer would have been precluded from litigating her claims in that hypothetical suit in Michigan, then under full faith and credit principles, she is precluded from litigating her claims in Ohio.  If she would not have been precluded from litigating her claims in that hypothetical Michigan suit, then the Full Faith and Credit Clause does not prevent her from litigating them in Ohio.

{¶ 17} This inquiry implicates the doctrine of *res judicata*.  Black's Law Dictionary (6 Ed.1990) 1305 gives the traditional definition of *res judicata*:  "Rule that a final judgment rendered by a court of competent jurisdiction on the merits is conclusive as to the rights of the parties and their privies, and, as to them, constitutes an absolute bar to a subsequent action involving the same claim, demand or cause of action."  See *Norwood v. McDonald* (1943), 142 Ohio St. 299, 27 O.O. 240, 52 N.E.2d 67, paragraph one of the syllabus.

{¶ 18} The term "*res judicata*" has several different meanings, depending on the context in which the term is used.  Historically in Ohio, *res judicata*, used in a narrow sense (the same sense as in the Black's definition above), has often been synonymous with what in the favored terminology of today is referred to as claim preclusion.  This concept has also been identified as the rules of merger and bar.  In referring to the other major component of the overall concept of former adjudication, Ohio courts in the past have frequently used the term "collateral estoppel" to describe what in the favored terminology of today is referred to as

---

1. For purposes of our inquiry, we must ignore the procedural problems that would most likely arise if she had actually tried to file such a suit in Michigan  — the posited Michigan suit is purely a hypothetical one.

"issue preclusion." We are not required to conduct any consideration of issue preclusion in the instant case.

{¶ 19} *Res judicata* has also been used in a broad way to include both major aspects of former adjudication, encompassing claim preclusion and issue preclusion. In order to give more consistency to the use of terms in this area of the law, the accepted modern usage of *res judicata* falls within this broad sense. Authorities today generally prefer the use of the term "claim preclusion" to refer to what in the past has been the narrow use of *res judicata*, and also prefer the use of the term "issue preclusion" to refer to what in the past has been called collateral estoppel. See 18 Wright, Miller & Cooper, Federal Practice & Procedure (1981 & Supp.1999), Chapter 13, Section 4402, at 6-11.

{¶ 20} Thus, in the accepted terminology of today, the type of *res judicata* at issue in this case is referred to as claim preclusion. In *Grava v. Parkman Twp.* (1995), 73 Ohio St.3d 379, 653 N.E.2d 226, this court adopted an expansive view of claim preclusion, holding at the syllabus that "[a] valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." In addition, "an existing final judgment or decree between the parties to litigation is conclusive as to all claims which were or might have been litigated in a first lawsuit." *Rogers v. Whitehall* (1986), 25 Ohio St.3d 67, 69, 25 OBR 89, 90, 494 N.E.2d 1387, 1388; *Natl. Amusements, Inc. v. Springdale* (1990), 53 Ohio St.3d 60, 62, 558 N.E.2d 1178, 1180; *Grava,* 73 Ohio St.3d at 382, 653 N.E.2d at 229.[2]

{¶ 21} However, in our full faith and credit inquiry in this case, Ohio's views on *res judicata* do not play a role. What matters is whether *Michigan* law

---

2. In order to avoid the possible misleading connotations in this context of the phrase "claims which might have been litigated" in the first lawsuit, some courts prefer to refer instead to "claims which should have been litigated" in the first lawsuit. See, *e.g.*, *Wilkins v. Jakeway* (S.D.Ohio 1998), 993 F.Supp. 635, 645.

would preclude Holzemer from raising her claims in the hypothetical suit mentioned above. See Erichson, Interjurisdictional Preclusion (1998), 96 Mich.L.Rev. 945, 949 (concluding that the preclusion law of the state that rendered the first decision should virtually always be applied to determine whether the claims raised in the suit filed in the second state should be precluded). See, generally, Lilly, The Symmetry of Preclusion (1993), 54 Ohio St.L.J. 289, 290. Since the way we resolve this case does not require us to consider any of the exceptions that could call into question the application of Michigan preclusion principles, we apply Michigan preclusion law in this case.

{¶ 22} Consequently, to the extent that defendants rely on the "might have been litigated" phraseology in cases such as *Grava* and *Natl. Amusements* to argue their *res judicata* position, defendants' reliance is misplaced. Those cases involved the question whether a previous proceeding in Ohio precluded a second proceeding in Ohio. Because this case instead involves a previous proceeding in Michigan, we do not look to Ohio law to determine if Holzemer's claims are barred.

{¶ 23} Holzemer does concede that she "could have" raised at least some of her claims in the Michigan probate proceeding by converting the proceeding to a judicially supervised one and then raising her claims, given that the Michigan probate court appears to have concurrent jurisdiction to determine issues involving trusts. See Mich.Comp.Laws Ann. 700.22. However, for the following reasons, Holzemer's concession in that regard is basically irrelevant to our full faith and credit inquiry.

{¶ 24} At this point, it is important to recognize a key facet of Holzemer's suit, a facet that is crucial in our consideration of Michigan law. Holzemer does not challenge the distribution of assets under the will. Instead, she challenges the creation of the trust accomplished shortly before decedent's death. She also challenges the attempted termination of the earlier "irrevocable" trust, as well as

the circumstances surrounding her surrender of the deed that she had received at the time the earlier trust was created.

**{¶ 25}** If Holzemer were challenging the distribution of assets under the will, general Michigan principles of *res judicata* would very likely be relevant to determine whether her claims would be precluded in the hypothetical Michigan suit. (Michigan courts take a "broad" view of claim preclusion. See *Gose v. Monroe Auto Equip. Co.* [1980], 409 Mich. 147, 160-161, 294 N.W.2d 165, 167-168.) In that situation, questions such as whether she was required to convert the proceeding to a judicially supervised one and whether she was required to object to the distributions under the will may have had to be answered, as threshold questions, before a determination could have been made whether Michigan principles of *res judicata* would prevent her from litigating her claims. In that situation, too, her other arguments regarding the limited scope of the completed Michigan proceeding would appear to be relevant.

**{¶ 26}** However, we do not need to consider these or other threshold questions, or to delve deeply into Michigan *res judicata* principles, to resolve our inquiry. The answer is more fundamental and specific than that. Based on specific Michigan law, we can dispense with a consideration of other *res judicata* factors and focus directly on the factor that resolves this case.

**{¶ 27}** Michigan precedents indicate that Michigan allows a challenge to a trust created by one who later dies to proceed, even where the decedent's will has been completely and finally probated. See *Vanderlinde v. Bankers' Trust Co. of Muskegon* (1935), 270 Mich. 599, 604, 259 N.W. 337, 338. Moreover, in Michigan, an heir or distributee can maintain an action pertaining to property not mentioned or accounted for in an estate proceeding after the estate has been closed. See *Powell v. Pennock* (1914), 181 Mich. 588, 593, 148 N.W. 430, 431. Furthermore, in Michigan, the right of action to set aside a fraudulent *inter vivos* conveyance of real property belongs to the heirs or devisees and not to the

decedent's personal representative. *Union Trust Co. v. Kirchberg* (1913), 174 Mich. 161, 165-166, 140 N.W. 464, 466. Defendants have not pointed out any Michigan precedents that call into question the holdings of these cases.

{¶ 28} Michigan law thus treats the substance of Holzemer's claims in this case as fundamentally different from claims that would be put forth in a challenge to the will. In *res judicata* terminology, Holzemer's hypothetical Michigan suit would involve "claims, demands or causes of action" separate from those in the completed probate proceeding. Thus, her claims would not be barred in that hypothetical Michigan suit.

{¶ 29} In addition, we agree with the court of appeals below that Holzemer's claims were not compulsory counterclaims in the Michigan probate proceeding. We are cognizant that Holzemer never was a "party" in the Michigan independent probate proceeding and also that Holzemer never really had a "claim" advanced against her in that proceeding. It would seem that "counterclaims" can by definition be raised only by parties who have first had claims advanced against them. For Holzemer's claims to have been considered compulsory counterclaims in that completed probate proceeding, it would have to be found that she was under an obligation to become involved in the proceeding, that she was under an obligation to have converted the proceeding to a judicially supervised one, that she was required to challenge the trust in that proceeding, and that she could legitimately be considered to be in the position of a defendant in that probate proceeding. The entire inquiry becomes more and more speculative as each step must be satisfied before proceeding to the next one. Furthermore, in light of the Michigan precedents detailed above, her challenge to the trust, in these circumstances, is viewed as separate from any challenge to the distributions under the will, so that there was no need for her to raise her claims as counterclaims in the Michigan probate proceeding.

**{¶ 30}** Moreover, even if we were willing to assume that she was in the "position of a defendant" in the completed Michigan probate proceeding, her claims still would not have been compulsory counterclaims in that proceeding. Michigan Court Rule 2.203(A)(1) provides that once a defendant advances a claim against an opposing party, all claims arising out of the same transaction or occurrence are compulsory counterclaims. Michigan's court rule on compulsory counterclaims is unique among the fifty states. See Oakley & Coon, The Federal Rules in State Courts: A Survey of State Court Systems of Civil Procedure (1986), 61 Wash.L.Rev. 1367, 1403 (Michigan has no compulsory counterclaim rule similar to Fed.R.Civ.P. 13[A].).

**{¶ 31}** Under Michigan Court Rule 2.203(A)(1), "[n]o counterclaims are compulsory initially, but if a counterclaim is asserted, then the counterclaim pleader must join all other claims that arise out of the same transaction or occurrence as the original action." Erichson, *supra*, 96 Mich.L.Rev. at 977-978. See, also, *Bank of the Commonwealth v. Hulett* (1978), 82 Mich.App. 442, 444, 266 N.W.2d 841 (A counterclaim in Michigan is compulsory only when a previous counterclaim has been raised.). Because Holzemer obviously never raised an initial counterclaim in the Michigan probate proceeding, none of her claims can be considered to have been compulsory counterclaims there, and she would have the option of raising her claims in a separate suit, even if she could be considered to have been a "defendant" in the probate proceeding.

**{¶ 32}** In light of all the above considerations, there is no reason for us to address in this case the possible ramifications of 1 Restatement of the Law 2d, Judgments (1982), Sections 22 and 23, at 185 and 194, which concern the *res judicata* effects of a defendant's actual or potential counterclaims.

**{¶ 33}** Because Michigan law treats a trust challenge as separate from a will challenge in these circumstances, Holzemer would be able to proceed with her hypothetical suit in a Michigan court, and those claims would not be claim

precluded in that case. Therefore, the Full Faith and Credit Clause does not require us to find that she cannot proceed with her suit in Ohio. Defendants actually are asking that Ohio's courts give more "faith and credit" to the Michigan completed probate proceeding than the Michigan courts themselves would give it.

**{¶ 34}** The key word in the Full Faith and Credit Clause for our inquiry here is "full." *Full* faith and credit simply means that Ohio courts must give the *same* effect to the Michigan probate court proceeding as that proceeding would be given by Michigan courts. See Section 1738, Title 28, U.S.Code. Full faith and credit does not mean that we must give full claim-preclusive effect to everything in any way determined under Michigan law, with no regard for how Michigan law would view the determination at issue.

**{¶ 35}** For all of the foregoing reasons, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

MOYER, C.J., DOUGLAS, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

————————————