[Cite as *Combs v. Oxford Mining Co.*, 2020-Ohio-876.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
| --- | --- | --- |
| BENJAMIN J. COMBS, ET AL | : | Hon. William B. Hoffman, P.J. |
|  | : | Hon. W. Scott Gwin, J. |
| Plaintiffs-Appellants | : | Hon. Earle E. Wise, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2018 AP 05 0022 |
| OXFORD MINING COMPANY | : |  |
|  | : |  |
| Defendant-Appellee | : | <u>OPINION</u> |

CHARACTER OF PROCEEDING:     Civil appeal from the Tuscarawas County Court of Common Pleas, Case No. 2017 CV 12 0912

JUDGMENT:     Affirmed

DATE OF JUDGMENT ENTRY:     March 9, 2020

APPEARANCES:

For: Plaintiffs-Appellants

ANDREW KARAS
159 S. Main Street
Suite 1030
Akron, OH 44308

For: CCU Coal and Construction

KAREN WINTERS
2000 Huntington Center
41 South High Street
Columbus, OH 43215

For: Oxford Mining

MARK STEMM
41 S. High Street
Suite 3000
Columbus, OH 43215

*Gwin, J.*

{¶1}     Appellants Benjamin Combs, individually and in his capacity as guardian of Karena Combs, Eugene and Sandra McGuinness, and Smokey Mountain Limited Partnership, appeal the April 24, 2018 judgment entry of the Tuscarawas County Court of Common Pleas granting Oxford Mining Company LLC's ("Oxford") motion for judgment on the pleadings and dismissing appellants' complaint with prejudice.

{¶2}     During the pendency of this appeal, Westmoreland Coal Company, the parent company of appellee Oxford, filed bankruptcy, and this Court stayed appellants' appeal.  On August 14, 2019, appellants filed a motion to reinstate proceedings and for substitution of party pursuant to Ohio Appellate Rule 29(B), seeking to substitute CCU Coal and Construction LLC ("CCU Coal") as appellee in this case for Oxford because the bankruptcy court approved a sale of substantially all assets of Oxford to CCU Coal. Contemporaneously with this Opinion, this Court issued a judgment entry granting appellants' motion to substitute CCU Coal as appellee in this case.

*Facts & Procedural History*

{¶3}     Oxford Mining Company LLC conducts a coal mining operation within one-half mile of appellants' respective properties.  Between the end of December, 2014, and the beginning of January, 2015, appellants experienced sudden and extreme declines in the water levels of their respective wells.

{¶4}     Mr. Combs filed a formal complaint with the Division of Mineral Resources Management ("DMRM") on January 7, 2015.  After conducting an investigation into Mr. Combs' water loss, DMRM concluded Oxford's mining operations were unlikely to be the cause of Combs' water loss.  Mr. Combs filed a second complaint with DMRM on June 2,

2016, after learning his neighbors also experienced water loss. DMRM did not conduct a second investigation, but concluded, based upon the prior investigation, it was unlikely Combs' water loss resulted from Oxford's mining operations. On June 1, 2016, Mr. McGuinness filed a formal complaint with DMRM regarding his water loss. A DMRM representative conducted an investigation into the source of the water loss on June 6, 2016, and determined that Mr. McGuinness' water loss was not attributable to Oxford's mining operations.

{¶5} Both Combs and McGuinness requested informal reviews of the determinations made by DMRM's representative. The Chief of DMRM conducted an informal hearing with respect to both claimed water losses on August 24, 2016. The Chief affirmed the prior findings that the water losses were not attributable to Oxford's mining operations. Appellants appealed the Chief's decision to the Ohio Reclamation Commission ("Commission") on November 2, 2016. Following a five-day hearing in April and May of 2017, the Commission entered written findings, its conclusion, and order on August 17, 2017. The Commission found appellants failed to meet their burden of proving to a quorum of Commissioners the alleged water losses were proximately caused by Oxford's mining operations. The Commission affirmed the Chief's decision in its Order.

{¶6} Appellants did not exercise their statutory right to appeal the Commission's findings to this Court pursuant to R.C. 1513.14. Rather, on December 6, 2017, appellants Combs and McGuinness, as well as appellant Karena Combs, appellant Combs' minor daughter, appellant Sandra McGuinness, and appellant Smokey Mountain Limited Partnership, a business owned by Eugene and Sandra McGuinness, filed a complaint against Oxford Mining, asserting the following claims: Count I – Oxford's unreasonable

use of groundwater (Combs Plaintiffs), Count II – Oxford's unreasonable use of groundwater (McGuinness Plaintiffs), Count III – Combs Plaintiffs' action pursuant to R.C. 1513.15(B) for injunctive relief against Oxford to replace/restore their diminished water supply to its pre-mining levels and provide reimbursement for temporary water supply costs; Count IV – McGuinness Plaintiffs' action pursuant to R.C. 1513.15(B) for injunctive relief against Oxford to replace/restore their diminished water supply to its pre-mining levels and provide reimbursement for temporary water supply costs; Count V - Combs Plaintiffs' action pursuant to R.C. 1513 (H) and (I) for damages against Oxford resulting from the diminution and/or interruption of their water supply; and Count VI – McGuinness Plaintiffs' action pursuant to R.C. 1513 (H) and (I) for damages against Oxford resulting from the diminution and/or interruption of their water supply.

{¶7}   Appellants state in their complaint that, "this is a civil action containing statutory and common law claims which requests damages and injunctive relief, and costs from Oxford Mining Company, LLC, for causing interruptions and permanent diminution to the water wells located on the respective property of plaintiffs."   Appellants assert jurisdiction pursuant to R.C. 1513.15, which allows the institution of civil actions against coal mining operators for violations of Chapter 1513.

{¶8}   Appellants aver they suffered the following damages due to the loss of their water supply as a result of Oxford's conduct: damage to their property by the loss of their reliable water supply; mental and emotional stress due to the loss of their reliable water supply; the loss of time they have had to divert from other matters to attempt to mitigate or remediate the damage from the loss of the water supply; and expenses relating to

remediation of the damage Oxford caused, including obtaining bottled water and installing a rainwater collection system, or purchasing and hauling water.

{¶9}    Attached to the complaint is a document entitled, "Findings, Conclusions & Order of the Commission," dated August 17, 2017.  The Commission stated it held a hearing on appellants' appeal from the Chief's decision on April 5, April 6, April 19, April 20, and May 10, 2017 and, at this hearing, the parties presented documentary evidence and witnesses.  The Commission heard from multiple witnesses and examined numerous exhibits.  The Commission issued detailed findings of fact.

{¶10}   As to the Combs water supply and complaint, the Commission stated:  after Combs lodged a formal complaint in 2015, division geologist Laura Bibey ("Bibey") conducted an investigation of the Combs water loss complaint, consisting of a site visit, an inspection of the well's structural condition with a down-hole camera, and the collection of a static water level measurement ("SWL"); the well appeared to be in good working condition; the SWL  indicated the available water in the well had dropped 43 feet from 2004; the distance between the Combs well and Oxford's mining area was 1770 feet; Bibey issued the results of her investigation and concluded Oxford's mining did not affect the Combs water supply because of the lack of damage to the well, because the distance and direction from mining is not conducive to water disruption, because heavy iron and metal deposits were found in the casing of the well, and because of the mild drought conditions in the region; Bibey did not visit the Combs property in response to Combs' second complaint in 2016, but issued her determination that the likelihood of mining activities affecting the Combs water quantity is very low; Combs' well has not returned to its original SWL and usage capacity; at the time of the hearing, Combs and his daughter

were required to restrict their water usage and supplemented the well's water supply with a rainwater collection system; and, in February of 2017, the SWL in the Combs well measured at 26 feet below its original SWL in 2004.

{¶11} As to the McGuinness water supply and complaint, the Commission found: in 2016, seventeen months after initially experiencing water loss, McGuinness lodged a formal complaint with the Division; Bibey conducted an investigation, including a site visit, inspection of the well's condition with a down-hole camera, and the collection of a SWL measurement; the camera did not show any visible structural problems with the well; the SWL showed a drop of approximately 21 feet of available water as compared to 1992; Bibey estimated the distance between the McGuinness well and the closest highwall on the mining permit to be 1100 feet; Bibey issued her decision and found that the probability of the McGuinness water being impacted by Oxford's mining was very low based upon the minimal amount of mining activity occurring in their wells' aquifers and the fact that the water recharging the McGuinness well was above the highest mining elevation; Bibey stated it is reasonable to conclude their water was not impacted by mining activities; the McGuinness well has not returned to its pre-mining SWL and usage capacity; McGuinness is not using the well and hauls most water for domestic use and obtains some water from rain barrels; and, in February of 2017, the SWL in the McGuinness well measured at 22 feet below its original SWL in 1992.

{¶12} With regards to the informal review by the Division Chief, the Commission stated: the Chief conducted an informal review of Bibey's determinations relative to the Combs and McGuinness water loss complaints; the Chief conducted an informal hearing on August 24, 2016, which included an expert retained by Combs and McGuinness; the

Chief did not conduct any independent field investigation of the wells, but asked Bibey to reconsider her determinations in light of the information presented at the informal hearing and asked the Division's lead hydrologist to peer review Bibey's reports; and the Chief affirmed the determinations of Bibey with regards to the Combs and McGuinness water supply.

{¶13} The Commission detailed other water loss complaints in the area, specifically two wells in the vicinity of those of McGuinness and Combs whose wells were voluntarily replaced by Oxford (the Williams and Hart wells). These wells were approximately 470 feet and 600 feet from the mining operations. The Commission then made extensive findings regarding hydrologic information, including a diagram of relevant coal seams, aquitards, aquifers, and water wells, and their approximate elevations. As to the findings of fact with regards to mining operations near Stream L, the Commission noted the Williams and Hart wells are located closer in distance to Oxford's mining in the Stream L valley than are the Combs and McGuinness wells. The Commission included a SWL measurement chart that showed the available water in the Combs, Williams, and McGuinness wells prior the mining, after the mining, and two years after the mining occurred.

{¶14} The next section of the Commission's orders is a "discussion" section in which the Commission reviewed the testimony and the evidence presented. The Commission noted the fact that the Combs and McGuinness wells were located 1090 and 1800 feet from the closest open highwall appears to be the most critical factor in the Division's determination that the diminution of water in these wells was not caused by Oxford's mining operations. Further, the Commission stated the evidence presented is

not sufficient to establish pumping as the cause of water loss in the McGuinness and Combs wells and also found the "subsurface divide" suggested by Bibey does not exist. The Commission stated as follows:

> The critical issue in this matter is whether the Appellants have successfully established a connection between mining activities in the Stream L valley and water losses at the McGuinness and Combs wells. Through their expert, the Appellants put forth a theory that mining was the proximate cause of water loss in these wells, suggesting that the highwall cuts in the Stream L valley caused a dewatering of the Zone C Aquifer, and that hydrologic connectivity in this area was sufficient to draw down water levels at the Combs and McGuinness wells. The Commission cannot reach a quorum on this issue.

{¶15} The Commission then issued its conclusions of law and first noted that the ultimate burden of persuasion in this matter is placed on appellants to prove by a preponderance of the evidence that the Chief acted arbitrarily, capriciously, or in a manner inconsistent with law in issuing his decision, which affirmed Bibey's determination that Oxford's mining on the permit D-2226 area did not affect the Combs and/or McGuinness water wells. The Commission cited R.C. 1513.162 for the requirement that the operator of a coal mining operation replace the water supply of an owner where the supply has been affected by diminution proximately resulting from the coal mining operation. Next, the Commission cited OAC 1513-3-02(B) with regards to a quorum. The Commission stated a quorum has concurred upon the "findings of fact" as set forth in the order and a quorum also concurred as to the discussion of the facts under the "discussion"

section in this case. However, "in its evaluation of whether the appellants have successfully met their burden of proof in this matter, establishing that the alleged water losses were proximately caused by coal mining, a majority of the participating members have concluded that a concurrence of four members cannot be reached." The Commission continued, "when a concurrence of a quorum cannot be reached upon the question of whether the Chief's action under appeal was, or was not, arbitrary, capricious, or otherwise inconsistent with law, O.R.C. 1513.13(B) requires the affirmation of the Chief's decision under appeal."

{¶16} The Commission's order states, "due to the lack of a concurrence of a quorum of Commission members on the question of whether the Division Chief's September 26, 2016 decision relative to the Comb and McGuinness water loss complaints was arbitrary, capricious, or otherwise inconsistent with law, the Chief's decision is hereby AFFIRMED." At the end of the order, the Commission lists "instructions for appeal," and states, "this decision may be appealed to the Court of Appeals, within thirty days of its issuance, in accordance with Ohio Revised Code 1513.14 and Ohio Administrative Code 1513-3-22."

{¶17} Oxford filed an answer to appellants' complaint in this case on January 9, 2018. Oxford filed a motion for judgment on the pleadings on March 5, 2018, arguing the doctrine of res judicata barred appellants' complaint. Appellants filed a response in opposition to the motion for judgment on the pleadings on March 16, 2018. Oxford filed a reply brief on March 21, 2018.

{¶18} The trial court issued a judgment entry on April 24, 2018 granting Oxford's motion for judgment on the pleadings and dismissing appellants' complaint against all defendants.

{¶19} The trial court found as follows: R.C. 1513.13 provides the procedure for anyone adversely affected by a decision of the chief of the division of mineral resources management to appeal to the reclamation commission; R.C. 1513.14 provides for a procedure to appeal from a decision of the reclamation commission to the court of appeals for the county in which the activity addressed by the decision of the commission occurred; the complaint alleges statutory and common law claims for causing interruptions and permanent diminution to the water wells located on the property of the plaintiffs; the plaintiffs filed formal complaints with DMRM; a representative of DMRM concluded that defendant's mining operations were unlikely to be the cause of the plaintiffs' water losses; after a request by the plaintiffs, the Chief of DMRM conducted an informal hearing with regard to plaintiffs' water losses on August 24, 2016; the Chief affirmed the finding that the water losses were not attributable to Oxford's mining activities; the plaintiffs appealed the Chief's decision to the Commission; the Commission was unable to reach a quorum on the issue of whether Oxford's mining in the Stream L valley caused plaintiffs' water losses; and the Commission ordered the Chief's decision affirmed due to the lack of concurrence of a quorum on the question of whether the decision relative to the water loss complaints was arbitrary, capricious, or otherwise inconsistent with law.

{¶20} The trial court further determined: the issue of whether defendant caused plaintiffs' water losses was actually and directly litigated before the Commission; the plaintiffs had ample opportunity to litigate the issue of whether defendant caused their

water losses before the Commission, as the Commission held a five-day hearing, the Commission entered written findings regarding defendant's mining activities, and plaintiffs' had the opportunity to present witnesses and exhibits on their behalf; the Commission's order was a final judgment on the merits; the Commission determined the issue of whether defendant caused the plaintiffs' water losses as a matter of law; Karena Combs, Sandra McGuinness and Smokey Mountain Limited Partnership are in privity with Ben Combs and Eugene McGuiness relative to their claims before the Commission; issue preclusion applies in this case and precludes the trial court from relitigating the issue of whether defendant's mining activities caused plaintiffs' water losses; plaintiffs were entitled to appeal the Commission's decision under R.C. 1513.14, but they did not take advantage of this opportunity, which would have been the proper way to challenge the Commission's affirmance of the Chief's conclusion that plaintiffs' water losses were not attributable to defendant's mining activities; all of the claims in plaintiffs' complaint are dependent upon the fact-finder concluding that defendant caused plaintiffs' water losses; absent a finding that defendant was the cause of plaintiffs' water losses, the plaintiffs cannot prevail on any of their claims; and defendant is entitled to judgment in its favor on all of the claims alleged in plaintiffs' complaint.

{¶21} Appellants appeal the April 24, 2018 judgment entry of the Tuscarawas County Court of Common Pleas and assign the following as error:

{¶22} "I. THE TRIAL COURT ERRED BY APPLYING THE DOCTRINE OF RES JUDICATA TO BAR LITIGATION OF THE ISSUE OF PROXIMATE CAUSE OF WATER LOSS, WHEN THE PRIOR ACTION DID NOT RESULT IN A VALID, FINAL JUDGMENT

ON THE MERITS AND THIS ISSUE WAS NOT PREVIOUSLY PASSED UPON AND DETERMINED."

*Motion for Judgment on the Pleadings*

{¶23} The trial court granted judgment on the pleadings for Oxford and against appellants. Civil Rule 12(C) provides, "after the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." The standard of review of the grant of a motion for judgment on the pleadings is the same as the standard of review for a Civil Rule 12(B)(6) motion, which requires the appellate court to independently review the complaint to determine if the dismissal was appropriate. *Ferreri v. The Plain Dealer Publishing Co.*, 142 Ohio App.3d 629, 756 N.E.2d 712 (8th Dist. Cuyahoga 2001). A motion for judgment on the pleadings pursuant to Civil Rule 12(C) presents only questions of law. *Peterson v. Teodosio*, 34 Ohio St.2d 161, 297 N.E.2d 113 (1973). The determination of a motion under Civil Rule 12(C) is restricted solely to the allegations in the pleadings and the nonmoving party is entitled to have all material allegations in the complaint, with all reasonable inferences to be drawn therefrom, construed in its favor. *Id.* Evidence in any form cannot be considered. *Conant v. Johnson*, 1 Ohio App.2d 133, 204 N.E.2d 100 (4th Dist.1964). In considering such a motion, one must look only to the face of the complaint. *State ex rel. Osborne v. City of North Canton*, 5th Dist. Stark No. 2018CA00132, 2019-Ohio-1744.

*Res Judicata*

{¶24} Res judicata can be divided into two separate subparts: claim preclusion and issue preclusion. *Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 653 N.E.2d 226 (1995). The Ohio Supreme Court has consistently held that the doctrine of res judicata is

applicable to administrative hearings of a quasi-judicial nature where the parties have had an ample opportunity to litigate the issues involved in the proceeding. *State ex rel. Davis v. Public Employees Retirement Bd.*, 120 Ohio St.3d 386, 2008-Ohio-6254, 899 N.E.2d 975; *Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 653 N.E.2d 226 (1995); *Superior's Brand Meats, Inc. v. Lindley*, 62 Ohio St.2d 133, 403 N.E.2d 996 (1980). Administrative proceedings are deemed quasi-judicial if notice, a hearing, and an opportunity to introduce evidence are afforded. *In re: Lima Memorial Hospital*, 111 Ohio App.3d 225, 675 N.E.2d 1320 (10th Dist. 1996). In this case, there is no dispute that appellants received notice, a hearing, and the opportunity to introduce evidence before the Commission.

*Claim Preclusion*

{¶25} Claim preclusion holds that a valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action. *Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 653 N.E.2d 226 (1995).

{¶26} Appellants contend the doctrine of claim preclusion does not apply to bar their claims in this case because the Commission failed to render a valid, final judgment on the merits. Appellants cite the Commission's general authorizing statute (R.C. 1513.05) and Ohio Adm. Code 1513-3-02(B)(1), which provide that "no action of the commission shall be valid unless it has a concurrence of at least four members."

{¶27} R.C. 1513.13(B) provides that, "the commission shall affirm the * * * decision of the chief unless the commission determines that it is arbitrary, capricious, or otherwise inconsistent with law." Ohio Adm. Code 1513-03-02(B), after stating no action of the

commission shall be valid unless it has a concurrence of at least four members, further provides in OAC 1513-03-02(B)(4) that,

In the event that a concurrence of four members cannot be reached, a decision shall be issued reflecting that four members of the commission could not reach an agreement regarding whether the chief's action under appeal was, or was not, arbitrary, capricious, or otherwise inconsistent with law. In such case, the commission's decision shall include the necessary order, affirming the chief's action under appeal pursuant to division (B) of section 1513.13 of the Revised Code.

{¶28} Pursuant to a reading of the plain language of the Revised Code, in pari materia with the Ohio Administrative Code, the failure of the Commission to reach a quorum on whether appellants successfully met their burden of proof in establishing that the water losses were proximately caused by Oxford's mining is not a non-action or a procedural default, but is a valid and final decision on the merits denying appellants' appeal and affirming the Chief's decision.

{¶29} Appellants also argue the doctrine of claim preclusion is not applicable in this case because the claims and causes of action in this case are not identical to those before the Commission. However, the Ohio Supreme Court "has not limited the application of the doctrine of res judicata to bar only subsequent actions involving the same legal theory of recovery as a previous action." *Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 653 N.E.2d 226 (1995). A valid final judgment on the merits between the parties is "conclusive as to all claims which were or might have been litigated in a first lawsuit." *Id.*

{¶30} The fact that a number of different legal theories may cause liability on an action arising out of a given episode does not create multiple transactions or claims. *Id.* In the administrative proceeding, the issue was whether Oxford's mining caused appellants' water loss. Each of the six counts asserted by appellants in this case center on the issue of whether Oxford caused appellants' water loss and are dependent upon the fact-finder concluding that Oxford caused appellants' water loss. Accordingly, the claims at issue in this case arise out of the same transaction or occurrence as the claims at issue in front of the Commission.

{¶31} In the primary case cited by appellants in support of their argument, the Ohio Supreme Court examined claim preclusion, but applied Michigan law. The Supreme Court specifically stated "Ohio's views on res judicata [did] not play a role" in their decision. *Holzemer v. Urbanski*, 86 Ohio St.3d 129, 712 N.E.2d 713 (1999). Thus, the rationale in *Holzemer* is not applicable to this case. Similarly, we find the instant case, in which the Commission issued a valid decision on the merits that appellants chose not to appeal pursuant to R.C. 1513.14, is not analogous to a case that ends in a mistrial or a hung jury.

{¶32} We find the Commission issued a valid, final judgment on the merits. The claims in this case arise out of the same transaction or occurrence that was the subject matter of the Commission's decision. Thus, claim preclusion applies to bar appellants' complaint.

*Issue Preclusion*

{¶33} Issue preclusion, or collateral estoppel, precludes relitigation of any "issue that has been actually and necessarily litigated and determined in a prior action." *Fort Frye Teachers Assn. v. State Emp. Rels. Bd.*, 81 Ohio St.3d 392, 692 N.E.2d 140 (1998). An issue "that was actually and directly at issue in a previous action, that was passed upon and determined by a court of competent jurisdiction, may not be drawn into question in a subsequent action between the same parties or their privities, whether the cause of action in the two actions be identical or different." *Id.*

{¶34} Appellants argue issue preclusion does not apply in this case to bar their claims because the Commission did not actually determine the cause of their water loss and did not resolve the factual dispute of whether Oxford caused appellants' wells to diminish because the concurrence of four members of the Commission could not be reached.

{¶35} We disagree with appellants. The Commission stated a quorum concurred upon the findings of fact and discussion as set forth in its order. The Commission issued detailed findings of fact regarding appellants' water loss, the mining activity in the area, and hydrologic information. In the discussion portion of the order, a quorum of the Commission concurred that the critical issue in the matter was whether the appellants "have successfully established a connection between mining activities in the Stream L valley and water losses at the McGuinness and Combs wells." Though the Commission could not reach a quorum on whether appellants successfully met their burden of proof in establishing that the water losses were proximately caused by coal mining, the Commission affirmed the Chief's decision pursuant to R.C. 1513.13(B). In his decision,

the Chief determined that appellants' water was not impacted by Oxford's mining activities. Thus, the issue of whether Oxford caused appellants' water loss was actually and directly litigated and determined before the Commission. Pursuant to R.C. 1513.13(B) and OAC 1513-03-02(B)(4), the failure of the Commission to reach a quorum on whether appellants successfully met their burden of proof in establishing that the water losses were proximately caused by Oxford's mining is not a non-action or a procedural default, but is a denial of a party's appeal and an affirmance of the Chief's decision.

{¶36} We find the cases cited by appellants in support of their argument to be distinguishable from the instant case, as those cases held issue preclusion did not apply for differing reasons. These reasons include: the court in the prior action did not make any specific findings of fact such that there was no basis to conclude the court actually passed upon and determined any issue; the administrative proceedings were not quasi-judicial because the plaintiff voluntarily dismissed the appeal prior to a hearing an adjudication by the administrative board; and the issue was not raised at the administrative level. *In re Earnest*, N.D. Ohio No. 11-36044 (Bankr. Ct. N.D. Ohio 2013); *In re: Lima Memorial Hospital*, 111 Ohio App.3d 225, 675 N.E.2d 1320 (10th Dist. 1996); *Lupo v. Voinovich*, 858 F.Supp. 699 (S.D. Ohio 1994).

{¶37} In this case, unlike the cases cited by appellants, the Commission made specific findings of fact such that there was a basis to conclude the Commission actually addressed the critical issue of whether Oxford caused appellants' water loss; the administrative proceedings before the Commission were quasi-judicial; the administrative code and Ohio Revised Code specifically provide that if a concurrence cannot be reached, a decision shall be issued that includes a necessary order affirming the chief's

action; and the issue of whether Oxford's mining activities caused appellants' water losses was raised in the administrative proceeding.

{¶38} Karena Combs, Sandra McGuinness, and Smokey Mountain Limited Partnership are in privity with Ben Combs and Eugene McGuinness relative to their claims before the Commission. Additionally, in applying the doctrine of issue preclusion, the causes of action do not have to be identical, so long as the issue has been actually and directly litigated in the quasi-judicial administrative proceeding. In their complaint, each appellant asserted three counts against Oxford, a claim for unreasonable use of groundwater, a claim for injunctive relief to replace/restore diminished water supply and provide reimbursement for temporary water supply costs, and a claim for damages from the diminution and/or interruption of their water supply. All six of these claims in the complaint center on the issue of whether Oxford caused appellants' water loss and are dependent upon the fact-finder concluding that Oxford caused appellants' water loss, an issued actually and directly litigated and determined before the Commission.

{¶39} Accordingly, we find the doctrine of issue preclusion applies in this case and precludes the relitigation of the issue of whether Oxford's mining activities caused appellants' water losses.

*Manifest Injustice*

{¶40} The third argument appellants assert is that they were not obligated to appeal the Commission's decision pursuant to R.C. 1513.14, but they could instead file a separate civil action pursuant to R.C. 1513.162(B). Further, that the application of res judicata should be applied to administrative proceedings with flexibility and the application of res judicata in this case "unjustly robbed" appellants of the opportunity to bring their

claims against Oxford and obtain a decision on the central issue of the case, and thus results in a manifest injustice.

{¶41} We disagree with appellants and find no manifest injustice results from the application of res judicata in this case. Rather, the doctrine of res judicata prevents relitigation of the claims and issues decided by the Commission. *Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 653 N.E.2d 226 (1995). Appellants had a full and fair opportunity to present their case to the Commission. *Id.* The Commission held a five-day hearing, heard from ten witnesses, examined numerous exhibits, and issued detailed findings of fact, conclusions of law, a discussion section, and an order. As stated specifically in the Commission's order, "this decision may be appealed to the Court of Appeals * * * in accordance with Ohio Revised Code 1513.14." R.C. 1513.14 provides as follows:

> Any party aggrieved or adversely affected by a decision of the reclamation commission may appeal to the court of appeals for the county in which the activity addressed by the decision of the commission occurred, is occurring, or will occur, which court has exclusive jurisdiction over the appeal. The appeal shall be filed within thirty days of issuance of the decision of the commission. * * *

{¶42} Appellants chose not to appeal the Commission's decision pursuant to R.C. 1513.14 after having a full and fair opportunity to present their case to the Commission. We find no manifest injustice in applying res judicata in this case.

{¶43} Based on the foregoing, appellants' assignment of error is overruled.

{¶44} The April 24, 2018 judgment entry of the Tuscarawas County Court of Common Pleas is affirmed.

By Gwin, J.,

Hoffman, P.J., and

Wise, Earle, J, concur