[Cite as *Parker v. Ohio Dept Job & Family Serv.*, 2021-Ohio-611.]

COURT OF APPEALS
KNOX COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| TAMMY PARKER | : | JUDGES: |
| | : | |
| | : | Hon. Craig R. Baldwin, P.J. |
| Plaintiff-Appellant | : | Hon. John W. Wise, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | Case No. 19CA000031 |
| | : | |
| OHIO DEPT OF JOB AND FAMILY | : | |
| SERVICES | : | |
| | : | |
| | : | |
| Defendant-Appellee | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Knox County Court of
Common Pleas, Case No. 19AP020051

JUDGMENT:                                   AFFIRMED

DATE OF JUDGMENT ENTRY:       March 4, 2021

APPEARANCES:

For Plaintiff-Appellant:                      For Defendant-Appellee:

JAMES P. CONNOR                          DAVID YOST
580 S. High St., Suite 150                 OHIO ATTORNEY GENERAL
Columbus, OH 43215

                                                      THERESA R. DIRISAMER
                                                      30 E. Broad St., 26th Floor
                                                      Columbus, OH 43215-3400

*Delaney, J.*

{¶1}   Plaintiff-Appellant Tammy Parker appeals the July 30, 2019 judgment entry of the Knox County Court of Common Pleas.

## FACTS AND PROCEDURAL HISTORY

### 2007 Revocation

{¶2}   Since 1992, Plaintiff-Appellant Tammy Parker has been licensed as a Type B Home Provider. A licensed Type B Home Provider is "the permanent residence of the provider in which child care is provided for one to six children at one time and in which no more than three children are under two years of age." Ohio Admin. Code 5101:2-13-01(GG).

{¶3}   In 2007, Parker's Type B Home Provider license was revoked by the Knox County Department of Job and Family Services ("KCDJFS") based on a substantiated disposition of neglect. The neglect finding occurred after a six-month-old infant suffered an injury to her face while under Parker's care. Parker had placed the child in a walker, other children in her care knocked over the walker, and the infant was injured. Parker did not witness the accident. Linda Purdy, a social worker with the Family Support Unit of the KCDJFS, was involved in the decision-making process to revoke Parker's Type B license. She was not involved in investigating the neglect determination.

{¶4}   Parker challenged the 2007 revocation of her Type B Home Provider license in the Knox County Court of Common Pleas. That proceeding was not included in the record, but it appears Parker was unsuccessful.

{¶5}   Parker was eligible to file an application for Type B Home Provider license in five years.

**2013 Application**

{¶6}   On or about January 7, 2013, Parker filed an application with the KCDJFS for certification as a Type B Day Care provider.[1] In 2013, the application and licensure process for a Type B Home Provider was regulated by former Ohio Admin. Code 5101:2-14-02, eff. 11-15-2010. The regulation stated:

> (A) Individuals interested in certification as a professional type B home providers or in-home aides to provide publicly funded child care shall contact the county department of job and family services (CDJFS) to request an application.
>
> * * *
>
> (2) The CDJFS shall accept, and approve or deny all completed applications for certification as a professional type B home provider or in-home aide within one hundred twenty days from the date the CDJFS receives the completed application.

Ohio Admin. Code 5101:2-14-02 (eff. 11-15-2010).

{¶7}   Purdy, a social worker in the Family Unit of the KCDJFS, reviewed Parker's application for certification to be a Type B provider. As part of the application process, Purdy submitted a requested to the Public Children's Services Agency ("PCSA") to determine if anyone in the applicant's home had a record with the PCSA. The PCSA reported a 2007 disposition of substantiated neglect against Parker. On January 16, 2013,

---

[1] There is confusion in the record as to whether Parker filed her application for a Type B Home Provider license in 2012 or 2013. Some of the underlying judgment entries refer to the 2012 application. According to this Court's review of the record, it appears Parker filed her application in 2013.

the KCDJFS denied Parker's application for Type B certification based on the Child Abuse and Neglect Report Information.

{¶8}   Parker appealed the denial of her Type B provider application to the Knox County Court of Common Pleas in Case No. 13AP03-0136. The trial court held a hearing on February 27, 2014. At the hearing, Parker challenged the basis for the 2007 finding of neglect. She also argued that the KCDJFS had an impermissible blanket policy of denying a Type B license application if there was a substantiated neglect disposition. She stated the KCDJFS should have considered the facts of the underlying incident, rather than just the substantiated neglect finding. Parker contended that Purdy was biased against Parker and because of Purdy's bias and role in the application process, the KCDJFS abused its discretion when it denied Parker's application for certification. At the conclusion of the hearing, the trial court stated, "I can't find a reason why these people should not have been granted a license on their application. * * * I think that they are entitled to a class Type-B license in this instance." (R. 695, Feb. 27, 2014 Hearing). The trial court ordered counsel for the Parkers to file a proposed judgment entry reflecting the trial court's ruling. (R. 695, Feb. 27, 2014 Hearing).

{¶9}   Counsel did not file a proposed judgment entry in 2014. It was not until January 2, 2018 that the trial court journalized the February 27, 2014 ruling by the trial court granting judgment in favor of Parker. In the judgment entry, the trial court stated the KCDJFS decision denying Parker's application was erroneous because there was no substantiated record or evidence that would otherwise preclude the application or prevent Parker from meeting the requirements necessary for licensure. (R. 699, Jan. 2, 2018 Judgment Entry).

**2015 Application**

KCDJFS Review

{¶10} On September 21, 2015, Parker filed an application for a Type B Home Provider license with the KCDJFS. At the time of Parker's 2015 application, the Ohio Administrative Code regulating the licensure of a Type B Home Provider had been amended, effective January 1, 2014. Pursuant to Ohio Admin. Code 5101:2-14-02(A), eff. 1-14-2014, "A resident of Ohio who wishes to become a licensed type B home provider shall contact the county department of job and family services (CDJFS) in the county in which he or she resides to request a JFS 01643 'Application for Licensed Type B Home' (rev. 1/2014)." It was the duty of the county department of job and family services to "recommend applications for approval or denial, to the Ohio department of job and family services (ODJFS) within one hundred days of receiving a completed application." Ohio Admin. Code 5101:2-14-02(K)(1) (eff. 1-1-2014). The Ohio Department of Job and Family Services ("ODJFS") made the determination whether to approve or deny the application based on the recommendation of the county department of job and family services.

{¶11} Aimee Frye, the KCDJFS Family Unit Support Supervisor, submitted a letter to the ODJFS on March 21, 2016 discussing Parker's September 21, 2015 application for a Type B Home Provider License. The letter states that after it received the application and required documentation for the application, the KCDJFS conducted an "internal staffing" to review the application and determine its recommendation. Present at the internal review was the Agency Director, Social Services Administrator, Children Services Attorney, Children Services Worker, and Child Care Supervisor. (R. 449).

{¶12} As part of the review, the letter stated that the KCDJFS considered the information received from the PCSA. It showed that Rick Parker (Tammy Parker's husband) and Tammy Parker were named as alleged perpetrators of substantiated neglect by the Morrow County Children Services on September 8, 1993. The substantiated neglect disposition was based on a burn suffered by a nine-month-old child on its right shoulder while under their care. Information from the Statewide Automated Child Welfare Information System showed in January 2000, there was an investigation into Tammy and Rick Parker because a child received an injury while under their care. On June 20, 2007, there was a substantiated disposition of neglect against Tammy Parker based on the injury to an infant's face while under her care. Based on the 2007 disposition of neglect, the KCDJFS revoked her Type B license on June 22, 2007. (R. 449-450). After the June 20, 2007 disposition of neglect and the June 22, 2007 revocation of her license, Tammy and Rick Parker filed grievances in the PCSA case and the Child Care case. The grievances were reviewed and denied. (R. 450).

{¶13} Frye stated in the letter that, "[a]fter reviewing the above items and after much discussion it is the position of Knox County DJFS to not recommend Tammy Parker for Type B licensure." (R. 447). The KCDJFS stated its recommendation to deny the Type B license was based on Ohio Admin. Code 5101:2-14-04(A)(7) (eff. 1-1-2014). That regulation states:

> (A) If a licensed type B home provider or applicant does any of the following,
>
> the county department of job and family services (CDJFS) may recommend
>
> to the Ohio department of job and family services (ODJFS) the denial of an
>
> application or revocation of a provisional or continuous license:

* * *

(7) The CDJFS has determined through the results of the child abuse and neglect report or any other means pursuant to rule 5101:2-14-07 of the Administrative Code, that there is an individual, of any age, who resides in the home and whose behavior or health may endanger the health, safety or well-being of children in care at the home.

Ohio Admin. Code 5101:2-14-04(A)(7) (eff. 1-1-2014).

{¶14} In support of its decision to not recommend licensure for Parker, the KCDJFS referred to the two incidents of injuries to two infants while under Parker's care and the substantiated dispositions of neglect against Tammy and Rick Parker. The letter also stated that the Parkers made accusations against Purdy during the 2007 proceedings. (R. 450-451).

<u>ODJFS Review</u>

{¶15} On March 31, 2016, the ODJFS notified the KCDJFS that it accepted the KCDJFS recommendation for the denial of Parker's Type B license. (R. 459).

{¶16} On June 2, 2016, the ODJFS sent Parker a "Notice of Opportunity for a Hearing Regarding the Proposed Denial of the Type B Home Provider License Application." The letter notified Parker that the ODJFS proposed to enter an adjudication order to deny the Type B license. Based on the information obtained by the ODJFS, it found Parker had not been compliant with Ohio Admin. Code 5101:2-14-04(A)(7) (eff. 1-1-2014). The letter notified Parker that she was entitled to a hearing pursuant to Ohio Revised Code Chapter 119.

ODJFS Hearing

{¶17} Parker requested a hearing. The matter was set for a hearing on September 20, 2018.

{¶18} On August 28, 2018, Parker filed a motion to dismiss the appeal, or in the alternative, for a continuance of the hearing. In her motion, Parker contended the January 2, 2018 judgment entry by the Knox County Court of Common Pleas in Case No. 13AP03-0136 was binding upon the ODJFS pursuant to the doctrine of res judicata. Parker argued the denial of the 2015 Type B license application raised the same issues as the proceedings in the 2013 application; therefore, the ODJFS was barred from denying the 2015 application for the Type B license.

{¶19} The matter came on for hearing before the Hearing Examiner on September 20, 2018. The Hearing Examiner first noted that he was without authority to rule on the merits of the pending motion to dismiss and he denied the motion to continue the hearing. (R. 75).

{¶20} Purdy testified at the hearing. She stated that in 2007, she received a complaint from a parent that a child was hurt while in Parker's care. (R. 120). Purdy gave the complaint to Children's Services because a child had been hurt. Purdy and Children's Services went to Parker's home together to investigate the incident, but Purdy's investigation was only to determine if any childcare regulations had been violated. (R. 121). Purdy was not involved in determining whether neglect or abuse had occurred. (R. 122). Children's Services substantiated neglect in the 2007 incident. Purdy did not independently verify the substantiated finding. (R. 122).

{¶21} Parker testified that when she applied for the Type B license in 2015, she complied with the requirements of the application procedures. She assumed she would be licensed as a Type B provider and was shocked when Purdy told her that she would never be a day care provider. (R. 273). She denied any knowledge of the September 8, 1993 substantiated neglect disposition and she believed the information was fabricated by the KCDJFS. (R. 285). The 1993 finding was not raised in her 2013 application for a Type B license. (R. 283). Rick Parker also testified. Parker submitted the transcript of the February 27, 2014 hearing before the Knox County Court of Common Pleas as evidence. (Parker Exhibit C).

<u>Hearing Examiner Report and Recommendation</u>

{¶22} The Hearing Examiner issued his Report and Recommendation on December 17, 2018. The Hearing Examiner first addressed whether res judicata barred the ODJFS from denying Parker's 2015 application for a Type B license. The Hearing Examiner stated in his Findings of Fact that the January 2, 2018 judgment entry in Case No. 13AP03-0136 was the appeal of a previous and separate application that was not the subject of the case sub judice. (R. 726). The basis of the trial court's judgment in favor of Parker in Case No. 13AP03-0136 was based on the trial court's "criticism and rejection of the County Agency's noted strict policy of denying an application based on the mere existence of substantiated neglect findings." (R. 727). The Hearing Examiner noted that after Parker's 2013 application, the law changed "to shift authority to approve or deny applications away from the County Agencies and to the State, and consequently, the County Agencies no longer had the authority to approve or deny applications for licensure." (R. 727).

{¶23} The Hearing Examiner concluded that res judicata did not apply to bar a denial of the 2015 application. (R. 728). First, the 2015 application was separate from the 2013 application, which was the subject of Case No. 13AP03-0136, and therefore did not involve the same claim or action. (R. 728). Second, the record in the case did not demonstrate any strict policy by the ODJFS to deny a Type B application based on the mere existence of substantiated neglect findings. (R. 728-729). Third, the law shifted the authority from the KCDJFS to the ODJFS to approve or deny an application. (R. 729).

{¶24} The Hearing Examiner also addressed the issue of whether there was sufficient evidence to deny the application or revoke a license of a Type B Home Provider pursuant to R.C. 5104.04(C). He found there were two substantiated neglect findings against Tammy Parker and one substantiated neglect finding against Rick Parker. (R. 727). There was sufficient evidence in the record to demonstrate there was someone residing in Parker's home whose behavior may endanger the health, safety, and well-being of children in care at the home. *See* Ohio Admin. Code 5101:2-14-04(A)(7). (R. 729).

{¶25} Parker filed two objections to the Report and Recommendation. (R. 731). She argued the action was barred by the doctrine of res judicata and there was no evidence to support the denial of the 2015 application pursuant to Ohio Admin. Code 5101:2-14-04(A)(7).

Adjudication Order

{¶26} On February 14, 2019, the Defendant-Appellee Director of the ODJFS issued its Adjudication Order. The Director overruled both of Parker's objections and denied Parker's September 21, 2015 Type B license application. It first found the county

application and the state application were distinct and different, being authorized by the different sections of the Ohio Revised Code and evaluated by different criteria in the Ohio Revised Code. (R. 745). The 2015 application was an application of first impression before the ODJFS.

{¶27} The Director next considered Parker's argument that there was no evidence in the record to support the conclusion that there was someone in the home whose conduct could endanger children. Parker contended in her objections that the KCDJFS nor the ODJFS conducted separate investigations to determine the validity of the SACWIS reports of substantiated neglect. (R. 745). The Director stated, "The ODJFS is not required to re-examine the facts and re-determine the outcomes of the situations that gave rise to the substantiation of neglect findings issued by the PCSA and reported in SACWIS. ODJFS is required to search the system to discover if any substantiated findings have been issued." (R. 745). The Adjudication Order stated Parker could re-apply for a Type B Home Provider license.

<u>Ohio Revised Code 119.12 Appeal to the Trial Court</u>

{¶28} Parker appealed the February 14, 2019 Adjudication Order to the Knox County Court of Common Pleas.

{¶29} After the ODJFS hearing records were transferred to the trial court and the parties filed briefs, the trial court issued its judgment on July 30, 2019. It first found that because Parker chose to file a new application in 2015 rather than pursuing the remedy issued in the January 2, 2018 judgment entry, Parker waived her right to pursue any remedy with respect to the first appeal. Because the 2015 application was governed by amended Administrative Code regulations not applicable to the 2013 application, res

judicata did not apply. The trial court next found that pursuant to the standard of review found in R.C. 119.12, there was reliable, probative, and substantial evidence to support the ODJFS to deny Parker's 2015 application for a Type B Home Provider license.

<u>Appeal of the Trial Court Judgment</u>

{¶30} Parker filed her notice of appeal of the trial court's judgment on August 28, 2019.

{¶31} On October 30, 2019, while the appeal was pending, Parker filed a motion for relief from judgment with the trial court. She simultaneously filed a motion to stay the appeal and for limited remand to the trial court to rule on the Civ.R. 60(B) motion. We granted the motion for limited remand to the trial court. On January 3, 2020, the trial court denied the motion for relief from judgment without a hearing. Parker filed a motion with this Court to supplement the record with the trial court's January 3, 2020 judgment entry, but we denied the motion. We found the January 3, 2020 judgment entry was a final, appealable order for which Parker could separately appeal.

{¶32} Accordingly, the only matter for our review in this appeal is the trial court's July 30, 2019 judgment entry affirming the Adjudication Order.

**ASSIGNMENTS OF ERROR**

{¶33} Parker states in her appellate brief that she assigns the following as errors:

{¶34} "I. THE TRIAL COURT ERRED BY AFFIRMING THE OHIO DEPARTMENT OF JOB AND FAMILY SERVICES' ('ODJFS') DENIAL OF TAMMY PARKER'S APPLICATION FOR A PROFESSIONAL TYPE B DAY CARE PROVIDER CERTIFICATION ON JUNE 2, 2016.

{¶35} "II. THE TRIAL COURT ERRED BY DENYING TAMMY PARKER'S APPEAL OF THE DENIAL OF HER APPLICATION FOR A PROFESSIONAL TYPE B DAY CARE PROVIDER CERTIFICATION BASED ON ITS FINDING THAT SHE 'WAIVED' HER RIGHTS.

{¶36} "III. THE TRIAL COURT ERRED BY DENYING TAMMY PARKER'S APPEAL OF THE DENIAL OF HER APPLICATION FOR A PROFESSIONAL TYPE B DAY CARE PROVIDER CERTIFICATION BASED ON ITS FINDING THAT APPELLANTS DID NOT REFUTE THE EVIDENCE PRESENTED AT THE HEARING AND THAT APPELLANTS 'DID NOT PRESENT ANY CONTRADICTING EVIDENCE OR ARGUMENT SHOWING THAT THE EVIDENCE RELIEF UPON BY THE HEARING EXAMINER IN THIS CASE WAS UNRELIABLE, NOT PROBATIVE, NOT SUBSTANTIAL, AND NOT IN ACCORDANCE WITH LAW, OR OTHERWISE UNREASONABLE OR IMPERMISSIBLE.'

{¶37} "IV. THE TRIAL COURT AND ODJFS ERRED BY FAILING TO ISSUE A PROFESSIONAL TYPE B DAY CARE PROVIDER CERTIFICATION LICENSE TO TAMMY PARKER AND DISMISSING THE APPEAL BASED ON RES JUDICATA AND LAW OF THE CASE IN THE FORM OF THE TRIAL COURT'S PREVIOUS RULINGS (KNOX CO. COMMON PLEAS CASE NO. 13AP03-0136) FROM THE BENCH ON FEBRUARY 17, 2014 AND SUBSEQUENT JUDGMENT ENTRY FILED JANUARY 2, 2018.

{¶38} "V. THE TRIAL COURT ERRED BY AFFIRMING THE OHIO DEPARTMENT OF JOB AND FAMILY SERVICES' ('ODJFS') DENIAL OF TAMMY

PARKER'S APPLICATION FOR A PROFESSIONAL TYPE B DAY CARE PROVIDER CERTIFICATION BY DECISION ON DECEMBER 17, 2018.

{¶39} "VI. THE TRIAL COURT AND ODJFS ERRED BY DENYING TAMMY PARKER'S APPLICATION FOR A PROFESSIONAL TYPE B DAY CARE PROVIDER CERTIFICATION APPLICATION AND APPEAL BECAUSE NEITHER THE ORIGINAL NOR APPEAL DECISIONS COMPLIED WITH OHIO ADM. CODE SECTION 5101:2-14-40(N)."

**ANALYSIS**

{¶40} While Parker raises six Assignments of Error as to the trial court's July 30, 2019 judgment entry, she outlines her argument in her appellate brief utilizing two statements stating that the trial court erred:

I. THE TRIAL COURT ERRED BY FINDING THAT APPELLANTS 'WAIVED' THEIR RIGHTS OR REMEDY BY FILING A SECOND DAYCARE LICENSE APPLICATION IN 2015.

II. THE TRIAL COURT FURTHER ERRED BY FINDING THAT APPELLANTS DID NOT REFUTE ANY EVIDENCE AT THE HEARING AND DID NOT PRESENT ANY CONTRADICTING EVIDENCE OR ARGUMENT SHOWING THAT THE EVIDENCE RELIEF UPON BY THE HEARING EXAMINER WAS UNRELIABLE, NOT PROBATIVE, NOT SUBSTANTIAL, OR NOT IN ACCORDANCE WITH LAW.

(Appellant's Brief, pp. i, 19, and 23). We organize our analysis of the trial court's July 30, 2019 judgment to reflect Parker's arguments.

**Standard of Review**

{¶41} An appeal of an Adjudication Order issued by the Director of the ODJFS is reviewed pursuant to R.C. 119.12.

<u>Review at the Trial Court</u>

{¶42} The trial court reviews an administrative appeal pursuant to R.C. 119.12 to determine whether the administrative order is supported by reliable, probative, and substantial evidence and is in accordance with law. *1st Class Driving Academy v. State*, 5th Dist. Knox No. 09CA000006, 2009-Ohio-5174, ¶ 22. Such evidence has been defined as follows: (1) "Reliable" evidence is dependable; that is, it can be confidently trusted. In order to be reliable, there must be a reasonable probability that the evidence is true. (2) "Probative" evidence is evidence that tends to prove the issue in question; it must be relevant in determining the issue. (3) "Substantial" evidence is evidence with some weight; it must have importance and value." *Id.*, citing *Our Place, Inc. v. Ohio Liquor Control Comm.*, 63 Ohio St.3d 570, 571, 589 N.E.2d 1303 (1992).

{¶43} In determining evidentiary conflicts, the Ohio Supreme Court in *University of Cincinnati v. Conrad*, 63 Ohio St.2d 108, 407 N.E.2d 1265 (1980), directed courts of common pleas to give deference to the administrative resolution of such conflicts. The Supreme Court noted when the evidence before the court consists of conflicting testimony of approximately equal weight, the common pleas court should defer to the determination of the administrative body, which, acting as the finder of fact, had the opportunity to determine the credibility and weight of the evidence. *Conrad* at 111.

{¶44} "Under R.C. 119.12, a reviewing court is obligated to determine whether the agency's decision is 'in accordance with law.' An agency adjudication is like a trial, and

while the reviewing court must defer to the lower tribunal's findings of fact, it must construe the law on its own." *Garber v. State Med. Bd. of Ohio*, 10th Dist. Franklin No. 19AP-620, 2020-Ohio-2909, ¶ 26 quoting *Ohio Hist. Soc. v. State Emp. Relations Bd.*, 66 Ohio St.3d 466, 471, 613 N.E.2d 591 (1993).

<u>Review at the Appellate Level</u>

{¶45} On appeal to this Court, the standard of review is more limited. Unlike the court of common pleas, a court of appeals does not determine the weight of the evidence. *Rossford Exempted Village School Dist. Bd. of Edn. v. State Bd. of Edn.*, 63 Ohio St.3d 705, 707, 590 N.E.2d 1240 (1992). In reviewing the trial court's determination, the Adjudication Order was supported by the reliable, probative, and substantial evidence, this Court's role is limited to determining whether the trial court abused its discretion. *Roy v. Ohio State Med. Bd.*, 80 Ohio App.3d 675, 680, 610 N.E.2d 562 (10th Dist.1992). The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). In *Pons v. Ohio State Medical Board*, 66 Ohio St.3d 619, 621, 614 N.E.2d 748 (1993), Justice Francis Sweeney discussed our standard of review as follows: "The appellate court is to determine only if the trial court has abused its discretion, i.e., being not merely an error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency. Absent an abuse of discretion on the part of the trial court, a court of appeals may not substitute its judgment for those of the [administrative body], or a trial court. Instead, the appellate court must affirm the trial court's judgment." *Renner v. Tuscarawas Cty. Bd. of Commrs.*, 5th Dist. Tuscarawas No. 2002AP100077, 2003-Ohio-405, ¶ 12, appeal not allowed, 99 Ohio St.3d

1412, 2003-Ohio-2454, 788 N.E.2d 648, citing *Lorain City School Dist. Bd. of Edn. v. State Emp. Relations Bd.*, 40 Ohio St.3d 257, 260–261, 533 N.E.2d 264 (1988).

{¶46} "On questions of law, however, the common pleas court does not exercise discretion and the court of appeals review is plenary." *Clovernook Health Care Pavilion v. Dept. of Medicaid*, 10th Dist. Franklin No. 20AP-87, 2021-Ohio-337, 2021 WL 408884, ¶ 9 quoting *Black v. State Bd. of Psychology*, 160 Ohio App.3d 91, 2005-Ohio-1449, ¶ 5 (10th Dist.). "[W]hether a trial court correctly interpreted and applied a statute is a question of law" reviewed de novo on appeal. *Id*. quoting *Myers v. Wade*, 10th Dist. No. 16AP-667, 2017-Ohio-8833, ¶ 8; 2200 *Carnegie, L.L.C. v. Cuyahoga Cty. Bd. of Revision*, 135 Ohio St.3d 284, 2012-Ohio-5691, ¶ 10 ("In the area of administrative procedure, jurisdictional issues that call for construction of the statutes present questions of law that we review de novo on appeal.").

### Res Judicata

{¶47} Parker first argues in her brief that the trial court erred when it found that she waived her right to a judicial remedy. The trial court stated that when Parker "chose to file a new application in 2015, and chose not to pursue the remedy sought in the first appeal as granted by this Court in its January 3, 2018 Judgment Entry, that the earlier application has been abandoned and that the Appellant waived any rights to pursue any further remedy with respect to the first appeal." (Judgment Entry, July 30, 2019). Parker argues the trial court had no basis in fact or law to apply the waiver doctrine.

{¶48} Waiver is ordinarily defined as "an intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). Parker contends there is no evidence that she

waived her remedy granted by the trial court in Case No. 13AP03-0136 as to the 2013 application. She states in her brief that she filed the second license application in 2015 hoping that the ODJFS and the KCDJFS would grant the Type B license based on the trial court's ruling in Case No. 13AP03-0136.

{¶49} The ODJFS argues the trial court's analysis mentions waiver as part of its broader discussion of the doctrine of res judicata. After discussing waiver, the trial court next states:

Instead, for whatever reason, the Appellant chose to file a new 2015 Application, and submit the review of the 2015 Application to the revised administrative code provisions applicable at that time. The review of the 2015 Application by ODJFS, because it was submitted and reviewed pursuant to administrative code provisions that were not applicable to the [2013] Application, is not bound by res judicata.

(Judgment Entry, July 30, 2019). We agree with the ODJFS's interpretation of the judgment entry that the trial court's discussion of waiver was part of its analysis of the larger concept, res judicata. At every level of the proceedings, Parker has raised the issue of whether the doctrine of res judicata prevented the ODJFS from denying Parker's 2015 application for a Type B license. In her brief before the trial court, Parker stated, "The ODJFS erred by failing to issue a license to Tammy and dismiss the appeal based on *res judicata* and law of the case in the form of this court's previous rulings from the bench on February 27, 2014 and Judgment Entry filed January 2, 2018." (Merit Brief of Appellants Tammy and Rick Parker, May 20, 2019). Accordingly, we review the trial court's judgment as to its analysis of res judicata.

{¶50} Res judicata is defined as "[a] valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." *Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 1995–Ohio–331, 653 N.E.2d 226, syllabus. "The doctrine of res judicata involves both claim preclusion (historically called estoppel by judgment in Ohio) and issue preclusion (traditionally known as collateral estoppel)." *Id*. at 381, 653 N.E.2d 226. Claim preclusion "prevents a party from litigating a cause of action after a prior court has rendered a final judgment on the merits of that cause as to that party." *Krahn v. Kinney*, 43 Ohio St.3d 103, 107, 538 N.E.2d 1058 (1989), citing *Norwood v. McDonald*, 142 Ohio St. 299, 52 N.E.2d 67 (1943), paragraph one of the syllabus. Issue preclusion "precludes the relitigation of an issue that has been 'actually and necessarily litigated and determined in a prior action.'" *Krahn*, at 107, 538 N.E.2d 1058, quoting *Goodson v. McDonough Power Equipment, Inc*., 2 Ohio St.3d 193, 195, 443 N.E.2d 978 (1983).

{¶51} Parker also contends the trial court was bound by the law of the case doctrine. The law of the case doctrine provides that a decision of a reviewing court in a case remains the law of the case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels. *Bridgestone Americas Tire Operations, LLC v. Harris*, 5th Dist. No. 2019CA00098, 2020-Ohio-76, 150 N.E.3d 1270, ¶ 72 citing *U.S. Bank v. Detweiler*, 5th Dist. Stark No. 2011 CA00095, 2012-Ohio-73, 2012 WL 75948, ¶ 26.

{¶52} This Court reviews matters of law with a de novo standard of review. Under that standard, we consider Parker's contention that res judicata and the law of the case doctrine bound the trial court to reverse, vacate, or modify the Adjudication Order or make

such other ruling as is supported by reliable, probative, and substantial evidence and is in accordance with law.

<u>February 27, 2014 Ruling and January 2, 2018 Judgment Entry</u>

{¶53} Parker argues the trial court's February 27, 2014 ruling from the bench and the January 2, 2018 judgment entry in Case No. 13AP03-0136 preclude the ODJFS from denying Parker's 2015 application for a Type B license. In determining whether Case No. 13AP03-0136 precludes the ODJFS from denying Parker a Type B license, we examine the rulings in that case and the context of those rulings. The circumstances surrounding the 2013 application will demonstrate the doctrines of res judicata and law of the case are not applicable to the 2015 application.

{¶54} First, we look to the Ohio Administrative Code regulations in place at the time of the 2013 application. In 2013, the application and licensure process for a Type B Home Provider was regulated by former Ohio Admin. Code 5101:2-14-02, eff. 11-15-2010. The regulation stated:

(A) Individuals interested in certification as a professional type B home providers or in-home aides to provide publicly funded child care shall contact the county department of job and family services (CDJFS) to request an application.

* * *

(2) The CDJFS shall accept, and approve or deny all completed applications for certification as a professional type B home provider or in-home aide within one hundred twenty days from the date the CDJFS receives the completed application.

Ohio Admin. Code 5101:2-14-02 (eff. 11-15-2010). Pursuant to these regulations, it was the sole responsibility of the KCDJFS, as a county department of job and family services, to accept and approve or deny an application for a Type B license. The ODJFS had no involvement in the application process for a Type B license in 2013.

{¶55} Next, the record shows the KCDJFS rejected Parker's 2013 application because she had a June 20, 2007 substantiated neglect finding from the PCSA. (R. 687). There was mention in the record that Parker challenged the 2007 revocation of her Type B license but was unsuccessful in reversing the decision. At the February 27, 2014 hearing, the trial court stated, "I was closely involved in the original case. I heard the facts. This was not a child care provider physically assaulting, striking, losing their temper, jerking the arm, none of that. By all accounts it was an accident. And as I look back on it, I'm not too sure I made the right decision I did in 2007 to be honest with you." (R. 693-694). Parker cites this statement from the trial court as evidence that the 2007 license revocation was in error. The trial court's opinion about its prior decision as to the 2007 license revocation, however, is not a judgment reversing the 2007 license revocation.

{¶56} Finally, at the conclusion of the February 27, 2014 hearing, the trial court stated on the record that it disagreed with the blanket policy of the KCDJFS to reject an application for a Type B license based on one substantiated neglect disposition. (R. 695). It was the opinion of the trial court that, "You have to stop take a look at the circumstances, change, events happen * * *." (R. 695). It is axiomatic, however, that a court speaks only through its judgment entries. On January 2, 2018, the trial court journalized its ruling in favor of Parker, stating that "there is no substantiated record or evidence which would

otherwise preclude the application to prevent Mrs. Parker from meeting the requirements necessary for licensure." (R. 699).

<u>Different Law, Different Parties</u>

{¶57} Parker contends res judicata and law of the case doctrine apply because the trial court unequivocally rejected the KCDJFS policy of denying an application based on a substantiated neglect disposition. The Ohio Administrative Code effective at that time of the 2013 application provided the county department job of family services with the sole authority to approve or deny a Type B license. If that version of the Ohio Administrative Code was in effect at the time of the 2015 application, Parker's argument regarding res judicata might be successful. The Ohio Administrative Code and the Type B licensing procedures, however, were amended effective January 1, 2014. Because of the amendments, we find Parker's res judicata and law of the case arguments must fail.

{¶58} Effective January 1, 2014, the Ohio Administrative Code was amended to remove the decision-making authority of the county departments of job and family services as to the Type B licensure. (R. 690). Pursuant to Ohio Admin. Code 5101:2-14-02(A), eff. 1-14-2014, "A resident of Ohio who wishes to become a licensed type B home provider shall contact the county department of job and family services (CDJFS) in the county in which he or she resides to request a JFS 01643 'Application for Licensed Type B Home' (rev. 1/2014)." It was the duty of the county department of job and family services to "recommend applications for approval or denial, to the Ohio department of job and family services (ODJFS)." Ohio Admin. Code 5101:2-14-02(K)(1) (eff. 1-1-2014). The Ohio Department of Job and Family Services ("ODJFS") made the determination whether to approve or deny the application based on the recommendation of the county

department of job and family services. (R. 690-691). Accordingly, in 2015, the decision-making authority belonged to the ODJFS, not the KCDJFS. Parker states in her appellate brief that the KCDJFS used the same reasons from the 2013 application to deny the 2015 application. Parker's statement is incorrect. The KCDJFS denied the 2013 application; the KCDJFS did not deny the 2015 application. Pursuant to the change in the law, the KCDJFS made a recommendation to the ODJFS. The ODJFS reviewed and denied the 2015 application. Parker has not provided any regulatory, statutory, or case law authority to show that the ODJFS was required to follow the recommendation of the county department of job and family services when the ODJFS determined whether to approve or deny the Type B license.

{¶59} Claim preclusion "prevents a party from litigating a cause of action after a prior court has rendered a final judgment on the merits of that cause as to that party." *Krahn v. Kinney*, 43 Ohio St.3d 103, 107, 538 N.E.2d 1058 (1989). Issue preclusion, or collateral estoppel, precludes relitigation of any "issue that has been actually and necessarily litigated and determined in a prior action." *Combs v. Oxford Mining Co.*, 5th Dist. Tuscarawas No. 2018 AP 05 0022, 2020-Ohio-876, 2020 WL 1157963, ¶ 33 citing *Fort Frye Teachers Assn. v. State Emp. Rels. Bd.*, 81 Ohio St.3d 392, 692 N.E.2d 140 (1998). An issue "that was actually and directly at issue in a previous action, that was passed upon and determined by a court of competent jurisdiction, may not be drawn into question in a subsequent action between the same parties or their privities, whether the cause of action in the two actions be identical or different." *Id.*

{¶60} In Case No. 13AP03-1036, the trial court rendered a final judgment on the merits of the 2013 application involving Parker and the KCDJFS, pursuant to the

regulations of the Ohio Administrative Code effective November 15, 2010. The trial court found the blanket policy of the KCDJFS in approving or denying Type B applications was impermissible. In the 2015 application, the parties involved were Parker and the ODJFS, both bound by amended regulations of the Ohio Administrative Code, effective January 1, 2014. The law and the parties are different; therefore, we find the doctrines of res judicata and law of the case did not bar the ODJFS from denying Parker's 2015 application for a Type B license.

### Reliable, Probative, and Substantial Evidence

{¶61} Parker next argues the trial court abused its discretion when it found there was reliable, probative, and substantial evidence to support the Adjudication Order denying Parker's 2015 application for a Type B license. We disagree.

{¶62} The denial of Parker's Type B license was based on Ohio Admin. Code 5101:2-14-04(A)(7) (eff. 1-1-2014). The regulation states:

(A) If a licensed type B home provider or applicant does any of the following, the county department of job and family services (CDJFS) may recommend to the Ohio department of job and family services (ODJFS) the denial of an application or revocation of a provisional or continuous license:

* * *

(7) The CDJFS has determined through the results of the child abuse and neglect report or any other means pursuant to rule 5101:2-14-07 of the Administrative Code, that there is an individual, of any age, who resides in the home and whose behavior or health may endanger the health, safety or well-being of children in care at the home.

Ohio Admin. Code 5101:2-14-04(A)(7) (eff. 1-1-2014). The KCDJFS recommended that the ODJFS deny Parker's application for a Type B license based in part on a 1993 and 2007 substantiated neglect dispositions by the PCSA.

{¶63} Parker argues she presented evidence before the Hearing Examiner challenging the 1993 and 2007 substantiated neglect dispositions by the PCSA. Tammy and Rick Parker testified about the 2007 incident and that it was an accident, not neglect, that caused a minor injury to an infant. They argued the 1993 substantiated neglect finding was fraudulent. Parker contends that the KCDJFS, specifically Purdy, is biased against her, which resulted in the negative recommendation. The KCDJFS recommendation, however, was based on the substantiated neglect dispositions by the PCSA, for which Purdy testified she had no responsibility in creating. She received a complaint regarding the 2007 incident and informed Children's Services, which completed its own investigation resulting in the substantiated neglect finding. The ODJFS argues Parker has failed to present any authority to demonstrate that the county department of job and family services or the ODJFS is not permitted to rely upon a substantiated neglect finding by the PCSA when making a recommendation or determining whether to approve or deny an application for a Type B license.

{¶64} The Hearing Examiner found the KCDJFS considered multiple factors in recommending denial of Parker's application including two separate incidents of injuries to infants resulting from the lack of supervision while in Parker's care, Parker's refusal to take responsibility for the incidents and minimalization of the incidents, Tammy and Rick Parker's respected histories of substantiated neglect, and the KCDJFS concern that licensing Parker would be a liability. (R. 727). After considering Parker's objections to the

Report and Recommendation, the Director of the ODJFS adopted the Hearing Examiner's findings of fact.

{¶65} The findings of the ODJFS are not conclusive, but the trial court must give due deference to the administrative agency's resolution of evidentiary conflicts. *Licking Cty. Veterans Services Commission v. Holmes*, 5th Dist. Licking No. 19-CA-75, 2020-Ohio-3294, 2020 WL 3125277, ¶ 27 citing *University of Cincinnati v. Conrad*, 63 Ohio St.2d 108, 111, 407 N.E.2d 1265 (1980); *See also Jones v. Franklin Cty. Sheriff*, 52 Ohio St.3d 40, 43, 555 N.E.2d 940 (1990) citing *Graziano v. Amherst Exempted Village Bd. of Edn.*, 32 Ohio St.3d 289, 293, 513 N.E.2d 282 (1987) [noting "due deference must be accorded to the findings and recommendations of the [ALJ] * * * because it is the [ALJ] who is best able to observe the demeanor of the witnesses and weigh their credibility"].

{¶66} This Court's review of the administrative appeal is through a much smaller window than that of the trial court. We only determine whether the trial court abused its discretion in considering whether the decision of the administrative body was supported by a preponderance of the evidence. *Rhodes v. Ohio Counselor, Social Worker & Marriage & Family Therapist Bd.*, 5th Dist. Muskingum No. CT2009-0011, 2009-Ohio-5666, 2009 WL 3440027, ¶ 37

{¶67} In this case, we find the trial court did not abuse its discretion when it determined the Adjudication Order denying Parker's 2015 Type B license application was supported by reliable, probative, and substantial evidence. The evidence in this case supported the determination that that there is an individual, of any age, who resides in the home and whose behavior or health may endanger the health, safety, or well-being of

children in care at the home pursuant to Ohio Admin. Code 5101:2-14-04(A)(7) (eff. 1-1-2014).

**CONCLUSION**

{¶68} The Assignments of Error of Plaintiff-Appellant Tammy Parker are overruled.

{¶69} The judgment of the Knox County Court of Common Pleas is affirmed.

By: Delaney, J.,

Baldwin, P.J. and

Wise, John, J., concur.